**Willie Salt COYOTE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 9178.**

United States Court of Appeals Tenth Circuit.

June 23, 1967.

Thomas E. Davis, Albuquerque, N. M., for appellant.

Scott McCarty, Albuquerque, N. M., (John Quinn and John A. Babington, Albuquerque, N. M., with him on brief) for appellee.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge and CHRISTENSEN, District Judge.

MURRAH, Chief Judge.

Appellant was convicted by jury trial and sentenced to five years imprisonment for violation of the Dyer Act, 18 U.S.C. § 2312. He brings this appeal urging that the trial court erred in admitting his written confession into evidence and in refusing to give his requested instruction concerning the confession.

The undisputed testimony discloses that on April 20, 1966, the New Mexico State Police arrested the appellant while in possession of a pickup truck reportedly stolen from the Dove Creek, Colorado, area earlier that day. The Federal Bureau of Investigation was advised that appellant was being taken to the Farmington, New Mexico, Police Department. When an F.B.I. Agent arrived at the Police Department, appellant was taken to the interview room where the Agent introduced and identified himself and advised appellant of his right to remain silent regarding the matter for which he had been arrested by the state police, but that if he did make a statement it could be used against him. He was informed that no threats or promises would be made to cause him to make a statement; that before making any statement he could consult a lawyer of his own choice and in the event he was without funds to hire a lawyer, the judge would appoint or provide one for him. Appellant indicated that he understood but had been drinking and was sleepy, whereupon he was given a cup of coffee and permitted to sleep. After about an hour, appellant was aroused and indicated he was in "better shape". The Agent again went through the procedure of identifying himself and repeated what he had told him concerning his constitutional rights. Appellant indicated that he understood and the Agent began questioning him regarding the truck in his possession at the time he was arrested, which he admitted having taken. After discussing the events leading to the arrest, the Agent began reducing the statement to writing. When it appeared the Agent was having trouble typing, appellant offered to type for him stating that he had been to Business College, was a proficient typist and also took shorthand. The Agent completed the typing and appellant signed the statement which recited everything the Agent had told him concerning his constitutional rights, specifically including the recitation that "I have also been told by Special Agent Jackson that I can talk to a lawyer or anyone before saying anything, and that the judge will get me a lawyer if I am broke." Appellant was thereafter charged and taken before the Commissioner where his rights were again explained to him, and he signed a written waiver of counsel.

The specific complaint here is that the mandate of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, 10 A.L.R.3d 974, was not observed because the clause in the written statement that " * * * I can talk to a lawyer or anyone before saying anything, and that the judge will get me a lawyer if I am broke" reflects that appellant was not informed with sufficient clarity of his right to a court appointed attorney at the time the statement was made. Thus he seems to say in effect that at most the Agent advised him only that he could talk to a lawyer before making the statement if he could afford to hire one, and that the judge would appoint a lawyer when he came to trial if he could not afford one.

When in the trial of the case objection was made to the statement, the jury was

excused and Judge Bratton conducted an admissibility hearing. The Agent who took the statement testified that after going over it with appellant, he asked, "Do you understand this, Mr. Coyote?" Appellant replied, "Does this mean the judge will get me a lawyer if I am broke?", to which the Agent replied, "Yes". Appellant admitted the Agent told him he had a right to counsel before he made a statement but testified that the Agent told him he could have a court appointed lawyer only when he came to trial in Albuquerque. The Agent expressly denied saying anything at all about Albuquerque because he " * * * didn't tell Mr. Coyote he was under arrest. Albuquerque had no part in my interview with him." On cross-examination appellant admitted there was nothing in the statement about getting a lawyer in Albuquerque and that he had read the statement before signing it.

Counsel for appellant argued in the trial court, as here, that the wording and punctuation of the written statement itself supports his client's understanding of the advice given to him by the Agent. Specifically he says that the comma preceding the phrase "and the judge will get me a lawyer if I am broke" renders the sentence susceptible of the interpretation that court appointed counsel would be available only after appellant had been before the judge.

The trial court, after considering the testimony and the signed, written statement, rejected appellant's contention concluding that " * * * it was a matter of semantics. I don't know how you can put these things down in words where you cannot argue about the meaning of them. To me I think the statement was perfectly clear that the man had a right to a lawyer and a court appointed lawyer before he made a statement to the agent, or didn't have to make a statement of any kind." The statement was thereupon admitted.

 Surely Miranda is not a ritual of words to be recited by rote according to didactic niceties. What Miranda does require is meaningful advice to the un-lettered and unlearned in language which he can comprehend and on which he can knowingly act. We will not indulge semantical debates between counsel over the particular words used to inform an individual of his rights. The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights.

It is, of course, always open to an accused to subjectively deny that he understood the precautionary warning and advice with respect to the assistance of counsel. When the issue is raised in an admissibility hearing, i. e. see McHenry v. United States, 10 Cir., 308 F.2d 700, it is for the court to objectively determine whether in the circumstances of the case the words used were sufficient to convey the required warning.

 This very situation emphasizes the necessity to observe Rule 5(a) F.R. Crim.P. requiring an arresting officer to take an arrested person before a Commissioner without "unnecessary delay". The manifest purpose of 5(a) is to make sure that an accused person is fully advised of all of his constitutional rights by a judicial officer—not an enforcement officer—before he makes any incriminating statement. See Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479; Miranda v. State of Arizona, supra. We have recently had occasion to re-emphasize that the intent of 5(a) is " * * * to prevent unnecessary delay during which time arresting officers may seek to elicit confessions, or marshal evidence for presentation." Gregory v. United States, 10 Cir., 364 F.2d 210. It is important here to note that although the interrogation occurred and the incriminating statement was taken while appellant was in custody and prior to his appearance before the Commissioner, there is no contention that the appearance before the Commissioner was unduly delayed or that the incriminating statement is inadmissible for failure to observe the requirements of 5(a). Cf. Nez v. United States, 10 Cir., 365 F.2d

286. This then is not a Mallory case, but rather one of voluntariness under Miranda. So judged, we agree with the trial court that the incriminating statement was voluntarily and understandingly given after appellant had been adequately advised of his constitutional right to the assistance of counsel.

Appellant also complains of the trial judge's failure to give his requested instruction based upon the essential ingredients of voluntariness laid down in Miranda.

The Supreme Court, while condemning the New York rule, in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205, approved the constitutionality of both the so-called Massachusetts and Orthodox procedures relating to admissibility and voluntariness of confessions. Briefly put, under the Orthodox approach, the trial court is the sole judge of voluntariness, leaving to the jury only the question of credibility. Under the Massachusetts approach, the trial court makes a preliminary determination of voluntariness for purposes of admissibility. Upon admission, the jury makes its own determination of voluntariness in deciding (1) whether the statement is involuntary in which case they must wholly disregard it, and (2) if found beyond a reasonable doubt to be voluntary, then to give it such weight as they see fit.[1] See generally Anno. 1 A.L.R.3d 1251; Wigmore on Evidence, 3d ed. § 861; "Involuntary Confessions: The Allocation of Responsibility Between Judge and Jury", Univ. of Chicago L.R., Vol. 21, No. 3, pg. 317.

The trial court, applying the Massachusetts procedure,[2] instructed the jury that "The very nature of a confession requires that the circumstances surrounding it be subjected to careful scrutiny in order to determine surely whether it was voluntarily and understandingly made. If the evidence does not convince you beyond all reasonable doubt that a confession was voluntarily and understandingly [made], you should disregard it entirely. On the other hand, if the evidence does show beyond a reasonable doubt that a confession was, in fact, voluntarily and understandingly made by the defendant, you may consider it as evidence against the defendant who voluntarily and understandingly made the confession."

Coyote did not and does not now object to this instruction, but contends that it does not go far enough. As we understand counsel, he argues that in the exercise of their discrete functions, the judge and jury must both determine voluntariness in accordance with the legal standards erected in Miranda. In other words he means to say that the jury must be told that compliance with the Miranda precepts is prerequisite to a finding that an admitted statement is voluntary in fact. Counsel requested an instruction reading upon Miranda, and objected to the court's refusal to give it. This rather novel contention raises the question of the impact of Miranda on the dichotomy of judge-jury functions under the Massachusetts rule.

In determining admissibility in the first instance the judge is un-

---

1. The effect of this is to say that what the judge has ruled is a voluntary statement as a matter of law based on facts, the jury may say was involuntary based upon its appraisal of the same facts. In other words we have the anomalous situation of what the judge says is voluntary in law, the jury may, in the exercise of its independent judgment say is involuntary in fact. See Wigmore on Evidence, 3d ed., § 861.

2. In so doing the trial judge apparently followed his interpretation of our decision in McHenry v. United States, 10

Cir., 308 F.2d 700. That case seems to adopt the Orthodox rule but cites and relies upon cases which can be construed to apply either the Orthodox or the Massachusetts rule. There is federal case law supporting both of these rules. See Jackson v. Denno, supra, majority opinion appendix, pg. 400; Univ. of Chicago L.R., supra, pp. 324–5. In any event, no objection is made here to the trial court's interpretation of McHenry, and we have no occasion to review it. For purposes of this case we take it that McHenry follows the Massachusetts rule.

doubtedly bound by the dictates of Miranda, i. e. if its prerequisites have not been fully met, the confession is without more involuntary as a matter of law, hence inadmissible and insubmissible. But an incriminating statement may also be inadmissible and insubmissible because not factually shown to have been freely and voluntarily given, even though the requirements of Miranda have been fully met; for an accused may surely be physically or psychologically induced to incriminate himself after he has been fully warned and advised of all his Constitutional rights. If the statement is admitted, the jury must, as we have seen, first determine for themselves whether the statement was in fact freely and voluntarily given. If not, they must wholly disregard it. Indeed they were so instructed in this case.

■■ On the issue whether the admitted statement is voluntary in fact, it is undoubtedly competent to show, as in the admissibility hearing, not only that while the accused was under in-custody interrogation he was, for example, denied food, drink and sleep, or promised leniency, but also that he was not forewarned and advised of his rights as explicated in Miranda. In short, compliance with Miranda may very well be relevant to the factual issue of voluntariness; but, it is not prerequisite. Miranda is concerned with voluntariness in terms of admissibility—it does not undertake to prescribe the prerequisites to a jury finding of factual voluntariness.

■■ A jury is, of course, entitled to the guiding hand of the judge in the application of the law to the facts as they find them. And, in a proper case the jury should surely be told that if they find the defendant did not fully understand the meaning of the warning and advice given to him as stated in a confession, they may take that fact into consideration along with all the other facts and circumstances in determining the factual voluntariness of the statement, i. e., see United States v. Inman, 4 Cir., 352 F.2d 954. But this is not a

proper case for such an instruction. Here the F.B.I. agent testified in the admissibility hearing that no threats or promises were made and that Coyote was advised of all his Constitutional rights including the right to counsel before making any statement. In the admissibility hearing Coyote testified in substance that he did not understand the full import of the agent's advice concerning his right to counsel before making his incriminating statement. The judge resolved that issue against the accused and we have affirmed his ruling. In the evidence before the jury the agent repeated his admissibility testimony without objection. Coyote did not take the stand to deny his testimony, nor did he dispute it in any other way. The agent's testimony concering the warnings given and Coyote's understanding of them as embodied in the statement thus stand undisputed and unimpeached before the jury. In this posture of the case it may be doubted whether even under the Massachusetts rule there was any issue of voluntariness to submit to the jury. In any event, Coyote was certainly not entitled to the requested Miranda instruction.

Affirmed.