504 P.2d 1204

### The STATE of Idaho, Plaintiff-Respondent,

### v.

### Ernest Duane GRIERSON, Defendant-Appellant.

### No. 10587.

Supreme Court of Idaho.

Dec. 19, 1972.

---

Howard I. Manweiler, Boise, for appellant.

W. Anthony Park, Atty. Gen., Wayne V. Meuleman, Asst. Atty. Gen., Boise, for appellee.

DONALDSON, Justice.

After a jury trial, the defendant-appellant, Ernest Duane Grierson, was convicted of forcibly raping two women in Boise; the two separate incidents upon which the conviction was based occurred on the nights of October 14 and November 25, 1968.

In this appeal, the appellant asserts that he had a constitutional right to counsel at a pre-information lineup; he also challenges the validity of a voice demonstration which took place at that lineup. In addition, the appellant submits that the record contains no competent evidence proving beyond a reasonable doubt that he was at the scene of either crime.

On December 19, 1968, the Idaho Falls Police Department asked the appellant's employer to have the appellant contact the Department, which he did; arrangements were then made for the appellant to appear at the police station that afternoon. Upon his arrival, the appellant was told that the police were investigating assaults and rapes in the Boise area and a murder in Idaho Falls. The investigating officers asked the appellant to read a form which contained the following provisions:

"YOUR RIGHTS:

Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. *We have no way of giving you a lawyer, but one will be appointed to you, if you wish, if and when you go to court.* If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you talk to a lawyer.

"WAIVER:

I have read the statement of my right shown above. I understand what my rights are. I am willing to answer questions and make a statement. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure of any kind has been used against me." Emphasis added.

The appellant then subscribed his signature to this waiver document.

After the execution of this waiver, the police told the appellant that they would like him to participate in a lineup. At this time, the appellant was a "suspect," but he had not been arrested or formally charged.

The police told the appellant that he was entitled to have an attorney present at the lineup if he so desired, and the appellant then subscribed another waiver document:

"I Duane Grierson this date 12–19–68 do hereby agree to stand in a lineup at the request of the Idaho Falls Police Department.

"I have been advised of my rights. I am aware that I need not do this without the presence of my attorney, unless I agree.

"At this time, I waive this right."

The two prosecuting witnesses were waiting together behind a one-way-glass device when the appellant and four other men were lined up before them. One of the victims recognized the appellant as her assailant almost immediately, became visibly upset, and began crying. Each of the individuals in the lineup was then asked to repeat in a forceful manner various expressions purportedly uttered by the rapist at the time of the attacks. Only after hearing the appellant's voice was the second prosecuting witness able to positively identify him as the man who had attacked her. The appellant was then placed under arrest and transported to Boise, where a complaint was filed charging him with two counts of rape.

■ Relying upon the Sixth and Fourteenth Amendments, the appellant contends that he was deprived of a constitutional right to the assistance of counsel at a pre-information lineup. The answer to the appellant's contention is contained in Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 1881–1882, 32 L.Ed.2d 411 (U.S. 1972), wherein the United States Supreme Court held that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated * * *—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." In *Kirby*, the Supreme Court sustained the validity of a post-arrest, pre-indictment confrontation.

In the case at bar, the lineup was conducted not only before the defendant-appellant had been formally charged but also prior to his arrest; a fortiori, the *Kirby* rationale applies in this case. We conclude that the appellant did not have a constitutional right to counsel at the lineup in question. This conclusion renders it unnecessary to consider the efficacy of the waiver executed by the appellant.[1]

■■ The appellant next contends that his Fifth and Fourteenth Amendment privilege against compulsory self-incrimination was violated because he was forced to repeat certain words purportedly uttered by the rapist. This contention is without merit. United States v. Wade, 388 U.S. 218, 222–223, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Annot., 24 A.L.R.3d 1261, 1265 (1969); *see* Kirby v. Illinois, *supra,* 406

U.S. 682, 92 S.Ct. at 1881. In *Wade,* the United States Supreme Court stated:

"[C]ompelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt. * * * [T]he Fifth Amendment privilege against self-incrimination * * * 'offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.' * * * None of these activities becomes testimonial within the scope of the privilege because re-

---

1. The appellant argues that his consent to participate in the lineup was vitiated because the rights warning given him stated that: "We have no way of giving you a lawyer, but one will be appointed to you, if you wish, if and when you go to court." Although we do not adjudicate the question raised, we note that it appears to be a close one. The United States Court of Appeals for the Seventh Circuit has recently condemned the use of such a provision in a Miranda Warning: "We hold that the warning given here was not an 'effective and express explanation;' to the contrary, it was equivocal and ambiguous. In one breath appellant was informed that he had the right to appointed counsel during questioning. In the next breath, he was told that counsel could not be provided until later. In other words, the statement that no lawyer can be provided at the moment and can only be obtained if and when the accused reaches court substantially restricts the absolute right to counsel previously stated; it conveys the contradictory, alternative message that an indigent is first entitled to counsel upon an appearance in court at some unknown, future time. The entire warning is therefore, at best, misleading and confusing and, at worst, constitutes a subtle temptation to the unsophisticated, indigent accused to forego the right to counsel at this critical moment.

The practice of police interrogation of an accused, after informing him that counsel cannot be provided at the present time, is a practice anticipated and expressly prohibited by the Miranda decision."

Williams v. Twomey, 11 CrL 2501 (7th Cir. 8/18/72) ; *accord,* United States v. Cassell, 452 F.2d 533 (7th Cir. 1971) ; Lathers v. United States, 396 F.2d 524 (5th Cir. 1968) ; Fendley v. United States, 384 F.2d 923 (5th Cir. 1967) (per curiam) ; Square v. State, 283 Ala. 548, 219 So.2d 377 (1969) ; Schorr v. State, 499 P.2d 450 (Okl.Cr.1972) ; Emler v. State, 286 N.E.2d 408, 412 (Ind.1972) (dissenting opinion). *Compare* State v. Fullen, 7 Wash.App. 369, 499 P.2d 893, 896 (1972) (holding valid a warning which stated: "If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish."). *Contra,* Steel v. State, 246 Ark. 75, 436 S.W.2d 800 (1969) ; People v. Williams, 264 N.E.2d 901 (Ill.App.1970), rev'd sub nom. Williams v. Twomey, *supra*; Rouse v. State, 266 N.E.2d 209 (Ind.1971) (split decision), disapproved in Williams v. Twomey, *supra*; People v. Swift, 32 A.D. 2d 183, 300 N.Y.S.2d 639 (1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 584, 24 LEd.2d 510 (1970) ; *see* Coyote v. United States, 380 F.2d 305 (10th Cir. 1967), cert. denied, 389 U.S. 992, 88 S.Ct 489, 19 L.Ed.2d 484 (1967). Since clearer phraseology is available (*see, e. g.,* State v. Fullen, *supra*), law enforcement officers would do well to consider eliminating the challenged sentence.

quired of the accused in a pretrial lineup." 388 U.S. at 222–223, 87 S.Ct. at 1930.

Moreover, we note that in this case the police adhered to the more desirable procedure of having the identifying witness listen to the voices of several other persons in addition to that of the suspect. *See* Crume v. Beto, 383 F.2d 36, 40 (5th Cir. 1967), cert. denied, 395 U.S. 964, 89 S.Ct. 2106, 23 L.Ed.2d 749 (1969); People v. Osuna, 70 Cal.2d 759, 76 Cal.Rptr. 462, 452 P.2d 678, 681 (1969); Annot., 24 A.L.R.3d 1261, 1272 (1969). But the appellant further contends that the identification of his voice by one of the prosecuting witnesses was invalid because the rapist's mouth was, at least part of the time, covered by a turtleneck sweater. The appellant assumes that because the assailant's mouth was sometimes covered by a turtleneck sweater, his voice was therefore "muffled" throughout the entire incident; and, the appellant argues, a valid comparison could not possibly be made between the muffled voice of the rapist and the unmuffled voice of the appellant at the lineup. We do not, however, have to decide whether hearing a muffled voice would provide a sufficient basis for a subsequent identification of an unmuffled voice; for, as the state points out, the record does not sustain the appellant's assertion that the rapist's voice was muffled during the incident. In fact, on direct examination the prosecuting witness who made the voice identification testified that her assailant's voice "was not muffled at all." There may be cases where a voice is so unclear, so disguised, or so inaudible that a witness lacks a sufficient basis for subsequently identifying it; but the record does not indicate that this is such a case. In any event, the evidentiary weight of voice recognition testimony is a question of fact for the jury's determination. State v. Cofer, 73 Idaho 181, 249 P.2d 197 (1952); Annot., 70 A.L.R.2d 995, 1012 (1960).

██ The appellant also contends that he was prejudiced because the prosecuting witnesses were allowed to view the lineup in each other's presence. Pointing out that he was not identified by one of the victims until after she had seen the other identify him, the appellant suggests that this second identification may have been unduly influenced by the first. Law enforcement officers should avoid the practice of having witnesses view a lineup and make identifications in the presence of one another. Thompson v. State, 438 P.2d 287, 289 (Okl.Cr.1968); N. Sobel Eye-Witness Identification, Legal and Practical Problems § 56.03, at 106 (1972). In certain cases, the joint viewing of a lineup could amount to a deprivation of due process. *See* Monteiro v. Picard, 443 F.2d 311, 313 (1st Cir. 1971), cert. denied, 404 U.S. 1041, 92 S.Ct. 726, 30 L.Ed.2d 734 (1972); People v. Daniels, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225, 240 (1969). As the United States Supreme Court only recently re-emphasized in Kirby v. Illinois, *supra:* "The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification." 406 U.S. 682, 92 S.Ct. at 1883; *see* Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). The procedure of having witnesses make identifications in each other's presence is said to be "fraught with dangers of suggestion." United States v. Wade, *supra* 388 U.S. at 234, 87 S.Ct. 1926; *see* Quinn, In the Wake of Wade, 42 U.Colo.L.Rev. 135, 153 (1970). Where, as here, two separate crimes are involved, it is apparent that an identifying witness's observation of a prior identification could often be especially prejudicial. However, in the particular circumstances of the case at bar, we find that no prejudice resulted to the defendant as a result of the joint viewing of the lineup. The record indicates conclusively that the witness in question named the appellant as her assailant because she recognized his voice and not because she was influenced by the prior identification made in her presence. The appellant himself admits—in his argument challenging the propriety of the voice identification—that the second identification "was based primarily on these statements." The second witness declined to identify the appellant, even though the

first witness had dramatically indicated that she recognized him as her assailant; rather, the second witness asked to hear the voices of the men in the lineup, and it was only after doing so that she positively identified the appellant as the man who had raped her. The facts presented here negate the existence of any undue influence upon the subsequent identification, and the joint viewing, although an undesirable practice, was not prejudicial to the appellant. *See* People v. Bauer, 1 Cal.3d 368, 82 Cal.Rptr. 357, 461 P.2d 637 (Cal.1969), cert. denied, 400 U.S. 927, 91 S.Ct. 190, 27 L.Ed.2d 187 (1970).

The appellant's final contention is that there is no competent evidence to prove beyond a reasonable doubt that he was at the scene of either of the rape incidents upon which his conviction is based. We note initially that the testimony of the victims places the appellant at the scene of both crimes; hence, it is not true that there is no competent evidence to prove his presence at the attacks. Relying upon alibi defenses, however, the appellant apparently suggests that in spite of the eye-witness testimony of the prosecuting witnesses, the evidence in support of his alibis was sufficient to require a directed verdict of acquittal.

When the first rape occurred at about 9:30 p. m. on October 14, the appellant was employed at the AVI–Simplot plant in Nampa; his time card for the week ending October 19 shows that on October 14, he checked in at 5:15 p. m. and checked out at 4:15 a. m. the next morning. The appellant's foreman testified that the appellant could not have been gone from work without his knowledge for substantially longer than the thirty-minute period allowed for lunch. But the foreman also testified that on one occasion he had permitted the appellant to leave the premises when the appellant said that his wife was in the hospital; and on another occasion, the appellant was gone for an hour or an hour and a half because he needed some medication. In addition, one of the appellant's coemployees testified that the appellant was sometimes gone for an hour or an hour

and a half. In State v. Ross, 92 Idaho 709, 449 P.2d 369 (1968), a substantially similar alibi defense was asserted; what the Court said there is appropriate here:

> "Appellant asserts that his alibi, i. e., that he was at work at the time of the alleged offenses, was not properly considered. The jury heard the testimony that appellant did 'punch in' and 'punch out' at work at the normal times on the days in question, that he was not missed at work and that he always ate lunch with a friend. *However, the alibi was not conclusive as to the appellant's whereabouts at the times and on the dates in question,* and indeed appellant does not so contend. In such an instance *the alibi is merely evidence to be weighed together with other evidence by the jury in arriving at its verdict."* Id. at 717, 449 P.2d at 377 (emphasis added).

At trial, the appellant asserted that he was in Idaho Falls when the second rape incident occurred in Boise, shortly after nine p. m. He notes that the state's own witnesses placed him in Idaho Falls at least until it was "just dark;" and that these same witnesses testified that at six a. m. the next morning, they found him asleep in their living room in Idaho Falls. In order to prove an alibi defense, the accused must show that at the time the crime was committed, he was at a place different from that where the offense occurred; it is not sufficient merely to show that it was improbable that he was at the scene of the crime when it was committed. State v. Davis, 6 Idaho 159, 172, 53 P. 678 (1898). While the testimony relied upon does tend to show such improbability, it does not place the defendant at a place different from where the crime was committed at the time in question. It is not beyond the realm of possibility that the defendant covered the distance between Idaho Falls and Boise between dusk and nine p. m.; in addition to the fact that the appellant was known to drive his car at rapid speeds, the distance may be quickly covered by anyone with access to an airplane. Moreover, we note that the jury is not re-

 

quired to accept alibi testimony merely because it is not directly contradicted by other witnesses. State v. Darrah, 92 Idaho 25, 29, 435 P.2d 914 (1968). Furthermore, in this case the testimony offered by the appellant in support of his alibi was to some extent controverted by that of other witnesses. For example, whereas the appellant claimed that he had remained in the Jenkins' living room throughout the evening and until the next morning, they testified that he left their apartment after dark in his car (which the appellant claimed was inoperative at the time); Steve Jenkins also testified that as the appellant left, he stated that he "wanted to go find a girl." By way of further example, a Boise police officer testified that he saw and "checked out" the appellant at the Greyhound bus depot in Boise at about two a. m. on the morning after the rape in question took place. Under the circumstances, the jury could properly decide to disbelieve the defendant's alibi. State v. Ross, *supra;* State v. Darrah, *supra;* State v. Vanek, 59 Idaho 514, 84 P.2d 567 (1938).

Judgment of conviction affirmed.

McQUADE, C. J., and McFADDEN, SHEPARD, and BAKES, JJ., concur.