STATE OF HAWAII, Plaintiff-Appellee, *v.*
SAPATUMOEESE MALUIA, Defendant-Appellant

NO. 5608

SEPTEMBER 11, 1975

RICHARDSON, C.J., KOBAYASHI AND MENOR, JJ.,
CIRCUIT JUDGE CHANG IN PLACE OF
OGATA, J., DISQUALIFIED AND LEWIS, J.,
ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY LEWIS, J.

On March 15, 1973, at approximately 6 p.m., defendant-appellant appeared at the receiving desk of the police station, and asked to see the captain. Declining at first to give a reason, he finally said he wanted to be arrested, that he had just shot his girl friend and her mother. After it was confirmed that a double homicide had occurred at the address given by defendant, he was placed under arrest.

Detective Mateo Chang, assigned to the case, took two statements from defendant that night, one an oral statement commencing at 8:40 p.m., and the other a stenographic statement commencing at 10:55 p.m., with an interval of about an hour and a half between the two statements. This appeal brings before the court the admissibility of the statements under the *Miranda* doctrine.[1]

After a pretrial hearing on the admissibility of the statements[2] the court found them in compliance with *Miranda* and voluntary, and denied defendant's motion to suppress them. Defense counsel then requested the production at trial of Detective Chang's longhand notes of defendant's oral statement. The detective's typed report made from these notes already had been produced. The

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966). In State v. Santiago, 53 Haw. 254, 265-266, 492 P.2d 657, 664 (1971), this court held that "the protections which the United States Supreme Court enumerated in *Miranda* have an independent source in the Hawaii Constitution's privilege against self-incrimination."

[2] See HRS § 621-26 (1974 Supp.); Jackson v. Denno, 378 U.S. 368 (1964).

prosecutor agreed that he would tell the detective to bring the notes, and the court so directed. However, it subsequently was ascertained that the notes were unavailable, whereupon defendant moved at the trial that the evidence concerning statements by defendant be restricted to the stenographic statement. The court's denial of this motion constitutes the second point on appeal.

## Compliance with Miranda

Before the oral statement, and again before the stenographic statement, Detective Chang warned defendant of his constitutional rights using the form known as HPD 81. The body of Form HPD 81 appears below[3] as marked by Detective Chang in accordance with defendant's answers to the questions on the form and initialed by defendant before the oral statement was taken. This paper was signed by defendant and by the detective as a witness. At the time, defendant was asked if he had been drinking and replied that he had not since the night before. Asked if he had taken any drugs

---

[3]  "WARNING PERSONS BEING INTERROGATED
OF THEIR CONSTITUTIONAL RIGHTS

Maluia, Sapatumoeese Isala do you know that you are in the custody of
(name)
Det. M. Chang at the Honolulu Police Station? Yes (checked) SIM   No___
(name of officer)
I am going to ask you questions about Homicide which occurred on 3-15-73
(offense)                                (date)
at 987 Hunakai St. but first I want to inform you of certain rights you have
(location)
under the Constitution.
Before I ask you any questions, you must understand your rights.
You have a right to remain silent.
You don't have to say anything to me or answer any of my questions.
Anything you say may be used against you at your trial.
You have a right to counsel of your choice or to talk to anyone else you may want
to.
You also have a right to have an attorney present while I talk to you.
If you cannot afford an attorney, the court will appoint one for you.
Do you want an attorney now? Yes___ No (checked) SIM
If you decide to answer my questions without a lawyer being present, you still
have the right to stop answering at anytime.
Do you understand what I have told you? Yes (checked) SIM No___
Would you like to tell me what happened? Yes (checked) SIM No___"

recently he answered in the negative. Detective Chang testified that he "acted very calm and cool and very matter of fact."

Defendant was twenty-six at the time, and was employed as an entertainer. The detective ascertained from him that he graduated from high school in California and had attended junior college there for a while. Although of Samoan ancestry, he appeared "to understand and speak clearly the English language," the detective testified, continuing: "He explained that his father was a career marine, and English language was used quite extensively at home."

Detective Chang further testified that defendant appeared "quite intelligent to him," and the circuit judge in ruling on the admissibility of the statements noted that he had had the opportunity of hearing defendant's testimony and observing his demeanor.

When defendant again was warned prior to the taking of the stenographic statement, the same form was used, and the same answers given, with some elaboration. Although defendant said in this statement that his knowledge of English was "not good" this is belied by the rest of the statement as well as the transcript of the pretrial hearing.

The gravamen of defendant's appeal on the *Miranda* point, as set out in the Statement of Questions Presented,[4] is as follows:

"Are the precepts of *Miranda v. Arizona*, 384 U.S. 436 (1966) violated when, prior to any incriminating statement, the only explanation given Appellant of his 'right to counsel' was a verbatim reading to him of Honolulu Police Department Form 81 ('Warning Suspects of Constitutional Rights') and the language of Form 81 is in fact contradictory and confused the Appellant?"

In *State v. Green*, 51 Haw. 260, 264, 457 P.2d 505, 508 (1969), this court accepted a signed Form 81, marked as in this case,[5] as corroborating the knowing and intelligent waiver of the right to counsel before and during interrogation

---

[4] Supreme Court Rule 3(b)(3).

[5] Note 3, *supra*

required by *Miranda*. But *Green* involved the effect of defendant's alleged requests to use the telephone. The right to court-appointed counsel played no part in the case. That situation is presented here.[6]

Defendant argues that: "The * * * language [in Form 81] did not inform the Defendant that if he was too poor to pay for a lawyer, one would be furnished him *before* questioning. * * * To say that a lawyer will be appointed by the court without further explanation is the same as saying that the lawyer will be appointed at some unspecified time in the future and is contradictory to the statement that he has a right to counsel now. This is not the 'effective and express explanation' of the right to counsel required by the *Miranda* case."

We agree with the State that: "The crucial test is whether the words in the context used, considering the age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his rights.'"[7]

In Form 81 the question: "Do you want an attorney now? Yes___No___" was preceded by the statement: "You also have a right to have an attorney present while I talk to you. If you cannot afford an attorney, the court will appoint one for you." The placing of the statement as to the right to appointed counsel immediately after the statement concerning the right to counsel at the interview, in itself indicated that defendant had the right to appointed counsel at the interview. *United States v. Noa,* 443 F.2d 144, 146 (9th Cir. 1971). In this context, the question: "Do you want an attorney now?" asked defendant to decide whether he wanted an attorney before proceeding further. Moreover, the warning must be read in the light of the additional language: "If you decide to answer my questions without a lawyer being present, you still have the right to stop answering at anytime," which immediately

---

[6] Defendant's application for appointed counsel was granted. However, defendant at the time of his questioning was not destitute. Besides cash, he had over $400 due from an employer or to his credit at a credit union; was working as above noted; occupied a rented Waikiki apartment; and had a car on which he was making payments.

[7] Quoted from Coyote v. United States, 380 F.2d 305, 308 (10th Cir. 1967). *Accord:* State v. Green, *supra,* 51 Haw. 260, 265, 457 P.2d 505, 508 (1969).

followed. *People v. Campbell,* 26 Mich. App. 196, 182
N.W.2d 4 (1970). Thus, defendant was told that any decision
he made to proceed was tentative, and he could stop the
interview at any time. Despite defendant's subjective
testimony,[8] we find no abuse of discretion by the trial court.
That defendant was not misled as to his right to counsel is
borne out by what happened when Form 81 was used the
second time, preceding the taking of the stenographic state-
ment. Defendant when asked if he wanted an attorney "now"
at first answered: "Not necessarily." This shows that he was
considering the matter. When asked again, he answered:
"No."

The argument that the form was defective in failing to
explain *when* the court would appoint an attorney for the
defendant, is not supported by *Miranda*. As stated in *Mayzak
v. United States,* 402 F.2d 152, 155 (5th Cir. 1968):

> "Stripped of its cry of pain, defendant's contention is
> simply that he was entitled to be warned not only of his
> right to counsel, but of his right to instant counsel.
> *Miranda* however, does not require that attorneys be
> producible on call, or that a Miranda warning include a
> time table for an attorney's arrival. * * * "

In *Miranda* the Court summarized the required warnings
as follows:

> "He must be warned prior to any questioning that he has
> the right to remain silent, that anything he says can be
> used against him in a court of law, that he has the right to

---

[8] At the pretrial hearing defendant testified:

"Q. Now, what about your right to a lawyer, Sapatu? What went on in your
head when you were told about a lawyer down there at the police station?

A. Well, I didn't know whether — whether I was supposed to get a lawyer
while I was being questioned, or until I get to court, then, you know, I will get one.
I didn't know that.

Q. Well, when did you expect to see a lawyer?

A. I guess when I go to court."

As stated in Coyote v. United States, *supra,* 380 F.2d 305, 308 (10th Cir. 1967):
"* * * it is for the court to objectively determine whether in the circumstances of the
case the words used were sufficient to convey the required warning."

And as held in State v. Green, *supra,* 51 Haw. 260, 264, 457 P.2d 505, 508 (1969):

"* * * the trial judge is vested with wide discretion to determine the credibility of
the witnesses and to weigh the evidence in order to ascertain whether the
prerequisites to admissibility are present. * * * "

the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.'' (384 U.S. 436, 479).

However, the Court also pointed out at page 490 that no particular form of words was required, and at page 486 the Court recommended the practice of the FBI for emulation by state and local enforcement agencies. That practice was stated in pertinent part as follows:

" 'If any person being interviewed after warning of counsel decides that he wishes to consult with counsel before proceeding further the interview is terminated * * *. FBI Agents do not pass judgment on the ability of the person to pay for counsel. They do, however, advise those who have been arrested for an offense under FBI jurisdiction, or whose arrest is contemplated following the interview, of a right to free counsel *if* they are unable to pay, and the availability of such counsel from the Judge.' ''

In the dissenting opinions of Justices Clark and Harlan,[9] the point was made that the FBI practice, in speaking of availability of counsel from the judge, might be interpreted by the suspect to mean that counsel would be appointed only when he appeared before the judge. It would seem that the Court did not deem this a fatal defect.[10] This conclusion is borne out by cases such as *United States v. Olivares-Vega,* 495 F.2d 827 (2d Cir. 1974); *Coyote v. United States, supra,* 380 F.2d 305 (10th Cir. 1967); *Klingler v. United States,* 409 F.2d 299 (8th Cir. 1969). After all, the statement that counsel will be appointed by the court is only the truth. While a division of authority on "[the] validity of warnings which

---

[9] 384 U.S. at 501, footnote, and 521.

[10] Since we agree with the trial court that Form 81, while sufficient in this case, is "not perfect in every respect," we deem the FBI form as reported in United States v. Cooper, 499 F.2d 1060, 1061 (D.C. Cir. 1974), worthy of note as it is an improvement. It closely follows the language of *Miranda,* reading in pertinent part:

" 'You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

" 'If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.' ''

A similar form as reported in State v. Fullen, 7 Wash. App. 369, 499 P.2d 893 (1972), was commended in State v. Grierson, 95 Idaho 155, 504 P.2d 1204, note 1 (1972).

advise only of some *in futuro* right to counsel" is noted by Douglas, J., in dissenting from the denial of certiorari in *Wright v. North Carolina*, 483 F.2d 405 (4th Cir. 1973), *cert. denied*, 415 U.S. 936 (1974), nearly all of the cases cited in the dissent as holding compliance was inadequate[11] are wide of the mark here.

Defendant cites *Fendley v. United States*, 384 F.2d 923 (5th Cir. 1967), and *Lathers v. United States*, 396 F.2d 524 (5th Cir. 1968). In *Fendley* defendant was told the court would appoint an attorney for him "when he went to court"; that is not the situation here. *Lathers* is not convincing in view of the inclusion in Form 81 of the question: "Do you want an attorney now?", and the treatment given the matter in the later fifth circuit case of *United States v. Lacy*, 446 F.2d 511 (5th Cir. 1971). Other cases cited by defendant have been distinguished *supra* or are not in point.[12]

Accordingly, we affirm the trial court's ruling on this branch of the case.

*Admissibility of testimony as to the oral statement, in view of the unavailability of the witness' longhand notes*

---

[11] United States *ex rel*. Williams v. Twomey, 467 F.2d 1248 (7th Cir. 1972): "* * * an attorney * * * will be appointed for you * * * if and when you go to court * * *" (see United States v. Cassell, 452 F.2d 533 (7th Cir. 1971)); United States v. Garcia, 431 F.2d 134 (9th Cir. 1970): defendant was told she could have an attorney appointed when she first appeared before the court, distinguished in United States v. Noa, *supra*, 443 F.2d 144, 146 (9th Cir. 1971); Square v. State, 283 Ala. 548, 219 So. 2d 377 (1968): defendant advised of right to lawyer during interview even if he could not afford one but further advised: "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to Court." Similar cases are Moore v. State, 251 Ark. 436, 472 S.W.2d 940 (1971), *see also* Reed v. State, 255 Ark. 63, 498 S.W.2d 877 (1973); State v. Grierson, *supra*, 95 Idaho 155, 504 P.2d 1204 (1972) (dicta); Schorr v. State, 499 P.2d 450 (Okla. Cr. 1972). State v. Carpenter, 211 Kan. 234, 505 P.2d 753 (1973), similar, but held harmless error.

In one of the cases cited, State v. Creach, 77 Wash. 2d 194, 461 P.2d 329 (1969), the court invalidated a warning in which defendant was told that if he could not afford an attorney the court would appoint one for him, without inclusion of the words "before any questioning," and without any warning of the right to counsel during interrogation as well as prior thereto. That the mere failure to include the words "before any questioning" would not be fatal appears from cases cited *supra*, following note 10.

[12] In Goodloe v. State, 253 Ind. 270, 252 N.E.2d 788 (1969), defendant was given no warning at all concerning her right to counsel during interrogation. Gray v. State, 506 P.2d 594 (Okla. Cr. 1973), and Statewright v. State, 278 So. 2d 652 (Fla. App. 1973), are similar.

As seen, the court denied defendant's motion that all evidence as to defendant's oral statement be excluded. This motion was made when the defense was informed that the notes Detective Chang made at the interview had been destroyed. The ground of the motion was that defendant was entitled to these notes for purposes of cross-examination.

Detective Chang testified at the trial that when he took defendant's oral statement, he stapled together some yellow sheets and used that as a scratch pad. "I wrote and I took notes on that scratch pad and used that to type out my report." The notes were highlights of the conversation taken in longhand. After he got through typing out his report he threw these notes away. "I put everything down in the report and I didn't need the original notes any more." As to whether it was his procedure to destroy the original notes of an interview of this type, he said it was in "a lot of cases," adding: "The only time I use a notebook is when I'm in the field."

The typed report was completed about nineteen days after the interview. It was produced at the pretrial hearing, and identified by Detective Chang as "the investigation report that I submitted." At this time it had not been ascertained that the original notes had been thrown away, the witness then testifying that the notes he took while questioning defendant "might be in my desk" but "I haven't been there — back there for several months." He further testified at this hearing that "most of the time" he retained notes following their written transcription.

Strictly speaking, defendant's motion was based on the testimony at the pretrial hearing and the prosecutor's representation to the court at the trial as to why the notes could not be produced. The further testimony above referred to came after denial of the motion. However, we do not deem this material in this case.

In the court below, defendant relied on H.R.Cr.P. Rule 17(h) in making his motion. In this court, defendant relies as well on H.R.Cr.P. Rule 16. We first consider Rule 17(h). As construed in *State v. Kahinu*, 53 Haw. 536, 498 P.2d 635 (1972), and *Chung v. Lanham*, 53 Haw. 617, 500 P.2d 565 (1972), this rule provides for the production of the statements

of government witnesses for impeachment purposes, but is limited by the definition of "statement" in paragraph (5) of the rule.

Rule 17(h) is essentially the same as the Jencks Act, Pub. L. 85-269, 18 U.S.C., sec. 3500, as it read prior to its amendment in 1970 by Pub. L. 91-452. The background of the rule is to be found in that act. *State v. Kahinu, supra,* 53 Haw. 536, 541, 498 P.2d 635, 639, note 3 (1972). *Palermo v. United States,* 360 U.S. 343 (1959), was the first case to come before the Supreme Court calling for an authoritative exposition of the act. Attributing to the Congress an intention "to surround the production of the carefully restricted and most trustworthy class of statements with detailed procedural safeguards" (p. 349), the Court said: "One of the most important motive forces behind the enactment of this legislation was the fear that an expansive reading of *Jencks* [*Jencks v. United States,* 353 U.S. 657 (1957)] would compel the undiscriminating production of agent's summaries of interviews regardless of their character or completeness" (p. 350). "It is clear that Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment." (p. 352.) "The plain intent of the act was thus to protect Government files by a restrictive definition of 'statements' * * *." *Williamson v. United States,* 365 F.2d 12, 15 (5th Cir. 1966).

Obviously, Detective Chang was a government witness, within the meaning of Rule 17(h).[13] Under Rule 17(h)(2), it is his statement which is producible, not the defendant's. There is no question raised under paragraph (3), *i.e.,* the longhand notes did relate to the subject matter of the witness' testimony on direct. Paragraph (4) provides for sanctions, which as stated in *State v. Kahinu, supra* at 543, are an absolute right if producibility is established, unless that principle is affected by the fact the material sought is no longer in existence, a matter not touched upon in *Kahinu.* We come now to

___

[13] The term "government witness" includes a government agent. Holmes v. United States, 271 F.2d 635, 638 (4th Cir. 1959); United States v. Berry, 277 F.2d 826, 828 (7th Cir. 1960); Karp v. United States, 277 F.2d 843, 847 (8th Cir. 1960); Peek v. United States, 321 F.2d 934, 940 (9th Cir. 1963).

the definition of "statement" in paragraph (5), which as seen limits producibility under the rule. This paragraph reads:

"(5) "Statement" Defined. The term "statement," as used in paragraphs (2), (3) and (4) hereof in relation to any witness called by the State, means:

> "(i) a written statement made by said witness and signed or otherwise adopted or approved by him; or

> "(ii) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the government and recorded contemporaneously with the making of such oral statement."

Subparagraph (ii) is not involved, because Detective Chang did not make an oral statement. Subparagraph (i) therefore is determinative. Defendant contends that: "The notes taken by Detective Chang and incorporated into a subsequent memorandum were 'adopted and approved' by Detective Chang as those terms are used in H.R.Cr.P. Rule 17(h)(5)(i)." We do not agree. The report which Detective Chang turned in was his only "statement".

In *United States v. Hensley*, 374 F.2d 341, 353 (6th Cir. 1967), the court ruled that destroyed interview notes from which reports had been prepared were not producible under the rule, stating: "We are able to find no testimony which shows that these notes were 'statements' within the meaning of the Jencks Act." In a later case, *United States v. Lane*, 479 F.2d 1134, 1136 (6th Cir. 1973), in which a federal secret service agent obtained counterfeit currency from the defendant and testified to the transaction, the court disposed of the asserted right to production of the agent's handwritten notes, which he employed in drafting his report and then destroyed, as follows: "There was no evidence that they were destroyed to prevent their examination by appellant, and the reports which had been compiled from the handwritten notes were made available to appellant's counsel." Finally in *United States v. Stephens*, 492 F.2d 1367, 1377 (6th Cir. 1974), the court stated the rule in the sixth circuit as follows:

> "This court has held that when an agent destroys his rough notes of an interview with a person after using the

notes to write a statement or report, it is not error to permit the agent to testify.''

It will be seen that these cases disclose two lines of thought, one having to do with the producibility of the rough notes under the rule, and the other taking into consideration also the reasons for the destruction of the notes. We are of the opinion that the former is the decisive factor in this case. No sanction is called for. As was well stated in *State v. Johnson,* 28 N.J. 133, 143, 145 A.2d 313, 319 (1958): ''A rule should not ordinarily be revised * * * except by an exercise of the rule-making power.''

In *United States v. Johnson,* 337 F.2d 180, 201 (4th Cir. 1964), *aff'd,* 383 U.S. 169 (1966), *on appeal on other grounds,* the fourth circuit dealt with a problem similar to that presented here, in the manner we have indicated is proper. After criticizing the FBI practice of destroying rough interview notes, the court ruled: ''However this may be, as we view the Jencks Act, the notes in question do not qualify * * * as a 'statement' * * * as * * * defined in the Act.'' *(Id.* at 202.) The reason given was that: ''[T]he Act does not cover statements made either by a defendant or by a defense witness.'' The court reasoned that while the FBI agents were government witnesses, the notes they made of the interviews were not their statements but at most those of defendants or defense witnesses. Accordingly, denial of the motion to strike the testimony of the agents was affirmed.

Again, in *United States v. Comulada,* 340 F.2d 449, 451 (2d Cir. 1965), the second circuit denied a motion to strike the testimony of a government agent who testified to a purchase of heroin. The agent's formal report and daily reports were made available to defense counsel. However, the agent also had made notes on 3 x 5 cards which he destroyed when he made up his report after incorporating everything that was in the notes. In affirming the ruling, the court said:

''There is nothing in 18 U.S.C. § 3500 which requires that all memoranda made in the course of an investigation should be kept and preserved. [Citations omitted.] Indeed, every consideration of efficiency and economy would seem to require the destruction of such fragmen-

tary memoranda as soon as they are no longer needed. Where every sensible motive supported destruction and no reason was advanced to suppose that the destruction was for an improper purpose, it would have been a needless waste of time to permit a *voir dire* inquiry."

The fifth circuit has held squarely that the producibility of memoranda or notes made by a government witness at the time of his interview of the defendant, for the purpose of refreshing his own recollection, is governed by *Goldman v. United States*, 316 U.S. 129 (1942), and not by the Jencks Act. *Needelman v. United States*, 261 F.2d 802 (5th Cir. 1958), followed in *Tillman v. United States*, 268 F.2d 422 (5th Cir. 1959), and *Spurrier v. United States*, 389 F.2d 367 (5th Cir. 1967). In *Needelman*, counsel had been permitted to see the case report made by the witness, a narcotics agent, but the production of the agent's notes was deemed discretionary under *Goldman*. This line of cases emphasizes that mere use of material does not constitute adoption of it within the meaning of the Jencks Act. The fifth circuit so held in *Williamson v. United States, supra*, 365 F.2d 12, 15 (5th Cir. 1966).

In *Killian v. United States*, 368 U.S. 231, 239 (1961), the witness was an informer who made oral reports of his expenses to the FBI. The agents made notes which they incorporated into receipts signed by the witness, and then destroyed. The informer's reports to the FBI as to his activities were produced. Concerning the notes, the Court stated:

"As to petitioner's contention that the claimed destruction of the agents' notes admits the destruction of evidence, deprives him of legal rights and requires reversal of the judgment, it seems appropriate to observe that almost everything is evidence of something, but that does not mean that nothing can ever safely be destroyed. If the agents' notes of [the informer's] oral reports of expenses were made only for the purpose of transferring the data thereon to the receipts to be signed by [the informer], and if, after having served that purpose, they were destroyed by the agents in good faith and in accord with their normal practice, it would be clear that their destruction did not constitute an impermissible destruction of evidence nor

deprive petitioner of any right." (p. 242)

In *Killian* it was conceded that the notes might have come within the second definition of "statement," which is not involved here. The destruction of the notes was revealed only in the briefs in the Supreme Court. Hence, a remand was necessary to determine why the notes had been destroyed. No such situation is presented here.

Defendant cites *Campbell v. United States,* 373 U.S. 487 (1963), and *Clancy v. United States,* 365 U.S. 312 (1961). In *Clancy,* government agents testified to interviews with the defendants. The trial court directed delivery to the defense of notes made by some of the agents at the time of the interviews, but refused requests for memoranda made after the interviews, on the ground that they were not covered by the Jencks Act because not made contemporaneously. The government conceded that this refusal was erroneous, and the Court held it was not harmless error. That part of the trial court's order which directed delivery of the notes made at the time of the interviews was not in issue and was not reviewed. As to *Campbell,* the Court specifically stated[14] that it was unnecessary to make any decision on the question whether destruction of the notes of an interview with a government witness gave rise to sanctions if the notes were producible under the Jencks Act. After careful consideration of the other cases cited by defendant, we find them also inapposite.

In a number of cases, courts have cautioned against the destruction of interview notes upon preparation of the agent's report, pointing to the difficulty which will be encountered at the trial in determining defendant's rights when the trial judge is unable to see the notes. See *United States v. Thomas,* 282 F.2d 191, 194 (2d Cir. 1960); *United States v. Johnson, supra,* 337 F.2d 180, 202 (4th Cir. 1964); *United States v. Bundy,* 472 F.2d 1266 (D. C. Cir. 1972). But as recognized in *United States v. Bryant,* 439 F.2d 642, 652 (D.C. Cir. 1971),[15] such admonitions look to the future, and at most have to do with *discoverable* evidence. Such cases are not in point here.

---

[14] 373 U.S. at 491, note 5.

[15] *See also* United States v. Bryant, 448 F.2d 1182, 1183 (D.C. Cir. 1971), following remand proceeding.

We do not need to examine the notes to determine the inapplicability of Rule 17(h)(5)(i). While we are in agreement with the principle stated in *Bryant,* p. 651, that "the duty of disclosure is operative as a duty of preservation," that principle must be applied on a case-by-case basis.

Before proceeding to consideration of H.R.Cr.P. Rule 16, we note that Detective Chang's notes were sought only for the purpose of impeachment. Defense counsel so stated in requesting their production, and the record confirms that this is the gravamen of the case. Rule 17(h)(5)(i) is decisive in this area. Discovery before trial under H.R.Cr.P., Rule 16, has a different purpose, that is, the preparation of the defense.[16] Without considering whether defendant is foreclosed from reliance on Rule 16 by reason of citation of Rule 17(h) in the court below, we conclude that Rule 16 lends no support to defendant's appeal.

Our rule reads the same as F.R.Cr.P., Rule 16, prior to the 1966 amendment of that rule. It does not provide for the production of defendant's statements. *Williamson v. United States, supra,* 365 F.2d 12, 16 (5th Cir. 1966). Nevertheless, the trial court has discretion to order such discovery and it has been characterized as the "better practice." *Cicenia v. LaGay,* 357 U.S. 504, 511 (1958). Here, however, defendant was provided the written report of his oral statement before trial, as well as the stenographic statement. The record shows that he was fully informed as to the government's case in respect of the statements he had made.

Citing *State v. Scott,* 479 S.W.2d 438 (Mo. 1972), defendant characterizes his trial as "fundamentally unfair" because the notes were not produced. This case would be in

---

[16] H.R.Cr.P., Rule 16, provides:

"Upon motion of a defendant at any time after the filing of the indictment or information, the court may order the attorney for the government to permit the defendant to inspect and copy or photograph designated books, papers, documents or tangible objects, obtained from or belonging to the defendant or obtained from others by seizure or by process, upon a showing that the items sought *may be material to the preparation of his defense* and that the request is reasonable. The order shall specify the time, place and manner of making the inspection and of taking the copies or photographs and may prescribe such terms and conditions as are just." (Underscoring added.)

point if defendant had not been fully informed as to the government's case in respect of defendant's statements. As stated in *State v. Kahinu, supra,* 53 Haw. 536, 544, 498 P.2d 635, 640 (1972), "the issue * * * is the prosecutor's duty not to deceive the defendant or inhibit affirmatively his access to evidence which the prosecutor intends to present at trial himself." Since defendant was fully informed on that score, it develops that only Rule 17(h) is involved. Moreover, the issue presented by that rule does not rise to a constitutional level.[17]

Affirmed.

*David S. Hobler,* Special Deputy Public Defender (*Donald K. Tsukiyama,* Public Defender, with him on the briefs), for defendant-appellant.

*George K. K. Kaeo, Jr.,* Deputy Prosecuting Attorney (*Barry Chung,* Prosecuting Attorney, with him on the brief) for plaintiff-appellee.

---

[17] State v. Kahinu, *supra,* 53 Haw. 536, 541, 498 P.2d 635, 639, note 3 (1972); United States v. Augenblick, 393 U.S. 348, 356 (1969); *see also* Scales v. United States, 367 U.S. 203, 257-258 (1961); Palermo v. United States, *supra,* 360 U.S. 343, 345 (1959).