**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Patrick Joseph O'BRIEN, Defendant-
Appellant.**

**No. 18516.**

United States Court of Appeals,
Seventh Circuit.

May 27, 1971.

Max Cohen, Cohen, Delph & McKenna, Gary, Ind., for defendant-appellant.

William C. Lee, U. S. Atty., John R. Wilks, Asst. U. S. Atty., Fort Wayne, Ind., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, PELL and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

Defendants Patrick Joseph O'Brien and George R. McMahon were charged in a four-count indictment with violation of Title 18, U.S.C.A. §§ 1952(a) (3) and 2, the interstate travel in aid of racketeering act and the aider and abettor act. The four counts charged separate but identical violations by interstate travel from Chicago, Illinois to East Chicago, Indiana for the purpose of carrying on "a business enterprise involving gambling" in violation of Indiana criminal statutes on August 12, 13, 14 and 15, 1969, respectively in Counts I, II, III and IV. After a trial by jury, concluded on March 6, 1970, verdicts were returned finding each of the defendants guilty on all four counts.

Defendant McMahon was sentenced to serve three years on each of the four counts, to run concurrently, which sentence was suspended and he was ordered placed on probation for five years. McMahon did not appeal and is not concerned with the instant appeal.

Defendant O'Brien was sentenced to a term of imprisonment for three years on each of the four counts, to run concurrently, six months to be served, the remaining two and one-half years suspended on each of the four counts. O'Brien was ordered placed on probation for a period of five years to begin after his release from the institution. O'Brien has appealed from the final judgment of his conviction and sentence.

No question is raised in this appeal on the sufficiency of the evidence to convict. The only charged errors relied upon for reversal concern rulings by the trial court in denying defendant's motions to produce certain statements pursuant to the so-called Jencks Act, Title 18, U.S.C.A. § 3500.[1]

1. Relevant portions of § 3500 are herein set out.

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of

It is conceded that the evidence adduced by the Government clearly established that defendant O'Brien operated a bookmaking establishment at Riley and Dickey Roads in East Chicago, Indiana on the four occurrence dates charged in the indictment, *i.e.*, August 12, 13, 14 and 15, 1969. Defendant McMahon was a brother-in-law of O'Brien and on the four dates charged traveled from Chicago, Illinois to East Chicago, Indiana, to O'Brien's bookmaking establishment to aid and assist him in the operation of the illegal activity. The Government established the charged violations through the direct testimony of several agents of the Federal Bureau of Investigation.

The testimony of the several FBI agents on direct examination related solely to their investigation of the specific offenses charged in the indictment and was limited to events that took place on August 12, 13, 14 and 15, 1969. On cross-examination facts were elicited showing that certain of the agent witnesses had been conducting a continuing investigation of each of the defendants prior to the dates alleged in the indictment and previous to the time discussed on the direct examination of the witnesses. It was further shown on cross-examination that reports had been made of their investigation, surveillance and observations of defendants and the operation of the bookmaking establishment and that such reports were in the possession of the Government.

Timely motions for production of these statements were made by defendants under § 3500, *supra*. The Government, without objection, produced and delivered to defense counsel all statements made by each of the agent witnesses concerning the events to which they had testified occurring on August 12, 13, 14 and 15, 1969.

The Government objected to the production of statements made by the agent witnesses relating to times earlier than those alleged in the indictment other than those testified about by the individual witnesses on their direct examination. Counsel for both sides and the trial court were well aware that such earlier reports were the ones sought and objected to. The objections were grounded on the claim that such earlier reports did not "relate" to the direct examination of the witnesses and were therefore not "producible" under the Jencks Act.

We have examined the record as it pertains to each of the agent witnesses, together with the rulings of the trial court, and shall comment on each of them.

Agent Watson testified on cross-examination that he had never entered the bookmaking establishment prior to August 12, 1969, but had the location under surveillance on several occasions prior thereto over the previous three months. He made the customary 302 reports of his investigation. Over Government objection, the trial court ordered production of all prior statements made by Watson. No error is charged by defendant as to this witness.

---

any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

"(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. * * *"

Agent Ford testified on cross-examination that he commenced his investigation concerning the bookmaking establishment in March, 1969 and continued it up until the time of August 12 through August 15, 1969. He made 302 reports on the investigation in which he participated. The Government objected to the production of such earlier reports on the ground that they were not pertinent and material in that they did not relate to the direct examination. After a lengthy side bar conference, the trial court sustained the Government's objection and refused to compel production.

Agent Albright testified on cross-examination that he had been assigned to conduct a surveillance of defendant McMahon prior to August 12, 1969. He could not remember the dates but had made such prior surveillance, kept logs of the same and turned them over to the FBI. The trial court sustained the Government's objection to production of the logs and denied production.

Agent Briick testified on cross-examination that he had defendants under surveillance many times prior to August 12, 1969 and kept logs of what he saw which he gave to the FBI. He had testified on direct examination that the only time he ever saw the defendants cross the state line together was on August 8, 1969. The log relating solely to that date was produced and delivered to defense counsel, that being the only occurrence date mentioned. On the Government's objection, the trial court declined to compel production of all other earlier logs.

The 302 reports and logs made by Agents Ford, Albright and Briick, to which production was denied by the trial court, were ordered sealed and made a part of the record.

▆▆▆▆ Agent Whitaker testified on direct examination solely with reference to a search warrant issued in this proceeding on which he made a return August 22, 1969. Such testimony was limited to the search warrant and the information contained therein. On cross-examination Whitaker testified he had received information from a confidential source intermittently from January, 1967 to August 22, 1969 and that it did not directly involve the defendants. Government counsel stated they had no prior knowledge of any such confidential source and had been assured that it had nothing to do with the case at bar. The trial court sustained the Government's objection to the production of any reports concerning the information received by the agent going back to January, 1967 as being too remote, not related to the indictment occurrences and wholly without the area of proper cross-examination. The trial court further denied defendants' motion to seal such reports and make them a part of the record. At this juncture, we pause to conclude and hold that the trial court did not err in its denial of defendants' motion to produce statements made concerning this confidential information. Clearly defendants were bent on a "fishing expedition" when mention was made of a confidential informant. Such reports are not producible being completely outside the scope and unrelated to the direct examination of the witness under the Jencks Act. No authority has been cited and we know of none requiring that they be sealed and made a part of the record in this situation.

Agent Grubert testified on direct examination solely concerning the arrest of defendant McMahon and a search made of his vehicle on August 22, 1969. There was no testimony concerning the occurrence dates of August 12 through August 15, 1969 charged in the indictment. On cross-examination he testified he had made some investigation of defendants in April, 1969 and filed reports thereof. Again, we conclude and hold that the trial court did not err in denying defendants' motion to produce and to seal the reports of such investigation and make them a part of the record. As with Whitaker, such statements were completely unrelated to the direct testimony of the witness.

Finding no error in the rulings of the nonoccurrence witnesses Whitaker and Grubert and the trial court having ordered production of all statements by Watson, together with all statements made in August, 1969 by occurrence witnesses Ford, Albright and Briick, we have for final consideration the situation surrounding the earlier investigative statements made by the latter three witnesses.

All such earlier statements by Ford, Albright and Briick were ordered sealed and made a part of the record and their production was denied by the trial court, as hereinabove pointed out. This brings us to the critical question on this appeal. Did the district court err in denying defendants' motion for production of statements of witnesses who had testified on direct examination without first conducting an *in camera* inspection of such statements?

Following the clear language of subsection (b), § 3500, *supra,* the three occurrence agent witnesses in question, having testified on direct examination for the Government and having made statements then in possession of the United States, such statements were *producible* to the defendant *if they related to the subject matter concerning which the witnesses testified.*

Although the trial court admitted such earlier statements by agent witness Watson over Government objection and indicated a similar intention as to the witness Ford, it was then persuaded to the contrary by Government objection as to Ford, Albright and Briick. Production was denied because the statements related to times other than those alleged in the indictment and other than those testified about by the individual witnesses on their direct examination, as hereinabove set out. We believe that under the circumstances indicated by the record before us such a *per se* rule is not dictated by the Jencks Act.

It is true that there will be many situations when, in the exercise of its sound discretion and in applying its good sense and practical experience, the district court will be justified in applying the strict standard under review here. Palermo v. United States, 360 U.S. 343, 353, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). Also, witness our application of this standard to the statements of witnesses Whitaker and Grubert, *supra.*

██ However, the word "relate" is not always limited to factual narratives. United States v. Borelli, 2 Cir., 336 F.2d 376, 393 (1964). In determining whether the statements in question "related to" the direct testimony of the witness, it must relate *generally to the events and activities testified to.* United States v. Cardillo, 2 Cir., 316 F.2d 606, 615 (1963). In United States v. Birnbaum, 2 Cir., 337 F.2d 490, 497–498 (1964), citing *Cardillo* and *Borelli, supra,* the court rejected the Government's reasoning there, which is the same as that made in the instant case, as being "too restrictive." We conclude, therefore, that within the context of the circumstances surrounding the continuing nature of the entire transaction as it relates to the investigation and surveillance, the trial court erred in ruling as a matter of law that the statements in question were not producible under subsection (b), § 3500, *supra.*

██ Further, as to such statements of the three occurrence witnesses, the error is compounded because of the mandatory requirements of subsection (c), § 3500, *supra.* Since the Government's objection to the subject statements was that they did not relate to the subject matter of testimony of the witnesses, the statute requires that "the court shall order the United States to deliver such statement for the inspection of the court in camera." This was not done and no such *in camera* inspection was made.

██ Of course, no one knows whether the sealed statements contain any material properly available to defendant for impeachment purposes. If they do the Government is afforded adequate protection through the "excision" requirements vested in the district court in subsection (c), *supra.* It is well settled

that the district court may not rely upon the representations of Government counsel as to what the statements contain or do not contain. The determination of the relevancy for production of the material is vested solely in the trial court with full opportunity for appellate review. Scales v. United States, 367 U.S. 203, 258, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961); United States v. Keig, 7 Cir., 320 F.2d 634, 636–637 (1963); United States v. Accardo, 7 Cir., 298 F.2d 133, 138 (1962). In our judgment, the district court erred in not determining the relevancy of the statements for production by first making an *in camera* inspection of them. We do not find this conclusion to be inconsistent with *Palermo, supra,* or with United States v. Trigg, 7 Cir., 392 F.2d 860 (1968), as contended by the Government.

■ We need to be reminded again that the whole thrust of the Jencks Act is to determine the producibility of materials solely for impeachment purposes. The district court is vested with broad discretion in determining this question through an *in camera* inspection. Its findings in this respect may be disturbed on appeal only if they are clearly erroneous.

The materials here subject to an *in camera* inspection by the district court are strictly limited to those ordered sealed by the court and made a part of the record. Without disturbing the seal, our examination of the package shows it to be one brown envelope, approximately 9 x 11 inches, containing a relatively small amount of material. An *in camera* inspection of the same will not impose an onerous burden on the trial court.

The defendant prays for a vacation of the judgment of conviction and an order for a new trial. He asks for too much and more than is required under these circumstances. The remedy we fashion follows Killian v. United States, 368 U.S. 231, 244, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961); Campbell v. United States, 365 U.S. 85, 98–99, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961); and was adopted by our court in United States v. Keig, 7 Cir.,

320 F.2d 634, 637 (1963). A well considered summary of such procedure may be found in United States v. Chapman, 2 Cir., 318 F.2d 912, 914 (1963).

■ Accordingly, it is ordered that the judgment of conviction and sentence be vacated and that this cause be remanded to the district court for the purpose of making an *in camera* inspection of the sealed materials of the agent witnesses Ford, Albright and Briick, to determine whether their production is warranted. If, on remand, the district court determines that such materials contain no information warranting their production to the defendant, it should enter a fresh final judgment based upon the record as supplemented by such findings, thus preserving to defendant-appellant the right of appeal therefrom. Conversely, if the district court concludes that the production of related portions of such materials for defendant's examination was wrongfully denied, it would then become its duty to accord defendant-appellant O'Brien a new trial.

Judgment vacated and remanded with directions.