UNITED STATES, Appellee,

v.

**Private First Class Bruce A. DIXON, SSN: 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, United States Army, Appellant.**

CM 435789.

U. S. Army Court of Military Review.

19 March 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Grifton E. Carden, JAGC, and Captain Joseph W. Moore, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R.R. Boller, JAGC, Major Robert B. Williams, JAGC, and Captain Dennis S. Cameron, JAGC, were on the pleadings for appellee.

Before FULTON, TALIAFERRO and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT ON FURTHER REVIEW

FULTON, Senior Judge:

At the initial trial of this case, the appellant pleaded guilty to housebreaking, larce-

ny, and robbery—violations of Articles 130, 121, and 122 of the Uniform Code of Military Justice, 10 U.S.C. §§ 930, 921, 922 (1976). This Court set aside the findings and sentence because the military judge's inquiry into appellant's plea bargain with the convening authority did not fulfill the requirements established by *United States v. Green,* 1 M.J. 453 (C.M.A.1976).

The rehearing we authorized has been held. Despite pleas of not guilty, the appellant has been convicted on the same three charges and sentenced to a dishonorable discharge, confinement at hard labor for 24 months, forfeiture of $200.00 pay monthly for 24 months, and reduction to the grade of Private E-1.

On this review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976), the error first raised by appellant is as follows:

THE MILITARY JUDGE ERRED BY DENYING THE APPELLANT'S RE-QUEST FOR THE GOVERNMENT TO PRODUCE THE AGENT'S ACTIVITY SUMMARY PURSUANT TO THE JENCKS ACT, 18 U.S.C. § 3500 [1976].[1]

For reasons that we shall explain, we ordered the criminal investigation agent's Agent Activity Summaries to be produced before this Court and granted leave to file the following supplemental assignment of error:

WHETHER THIS HONORABLE COURT HAS THE AUTHORITY TO ORDER THE PRODUCTION OF AGENT ACTIVITY SUMMARIES FOR THE PURPOSE OF DETERMINING HOW THE SUMMARIES RELATED TO THE TESTIMONY OF THE WITNESS CONCERNED AND WHETHER FAIL-URE TO PRODUCE THOSE NOTES PREJUDICED THE SUBSTANTIAL RIGHTS OF THE APPELLANT.

1. The issues raised by this assignment of error relate only to the housebreaking and larceny charges. The robbery conviction is unchallenged on this appeal.

2. 18 U.S.C. § 3500 (1976), added by the Act of 2 September 1957, Pub.L. 85–269, 71 Stat. 595, as

The issues to be discussed are the requirements of the Jencks Act; whether the trial judge's actions were correct; and, if they were not, the corrective avenues open to us.

### The Jencks Act

So far as material to this case the section of title 18 popularly known as the Jencks Act provides that—

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness . . . which relates to the subject matter as to which the witness has testified. . . .

\* \* \* \* \* \*

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted by him; . . . .[2]

The Jencks Act applies to courts-martial. *United States v. Albo,* 22 U.S.C.M.A. 30, 46 C.M.R. 30 (1972). A military investigator's notes of the type known as case activity notes or agent activity summaries have been held to be "statements" as defined in subsection (e)(1) of the Jencks Act, *supra. United States v. Herndon,* 5 M.J. 175 (C.M. A.1978); *United States v. Albo, supra.* The questions whether an agent's notes constitute a "statement" and whether any part relates to "the subject matter as to which the witness has testified" are to be resolved initially by the military judge. *See United States v. Albo,* 22 U.S.C.M.A. at 34, 46 C.M.R. at 34. *Cf.* 18 U.S.C. § 3500(c) (1976).

### The Military Judge's Ruling

This case involves a typical barracks larceny: the barracks room assigned to Corpo-

amended. The statute is intended to prevent what Congress foresaw might be an overbroad application of the decision in *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). *See* [1957] U.S.Code Cong. & Admin.News, p. 1861 *et seq.*

rals Vicain and McCarthy was surreptitiously entered while the occupants were away (the thief climbed a drain pipe and entered through an exterior window). Several items of stereophonic recording and playback equipment, of an aggregate value approximating $850, were stolen. The appellant and his friend Thompson were seen on the street below, loading stereo equipment into a white Opel station wagon and were observed leaving the installation in the vehicle. Accordingly, when the theft was reported to the local Criminal Investigation Detachment, suspicion focused on the appellant and Thompson. Special Agent Lewis Goode was one of two investigators assigned to the case. He inspected the crime scene and interviewed the victims and some of the witnesses. Later that night, after the appellant and Thompson were seen reentering the installation in the white Opel station wagon, he apprehended and interrogated them. The appellant waived his rights to silence and to counsel and made an oral statement to Agent Goode. He admitted assisting Thompson (the one who had climbed the pipe and entered the room) in loading the equipment into the vehicle and acknowledged that the property came from the room occupied by Vicain and McCarthy. Appellant said nothing further and would not make a written statement, however.

Special Agent Goode was an important government witness at the rehearing. He testified as to the circumstances that caused him to suspect and apprehend the appellant. He testified as to the circumstances and content of the appellant's oral statement. The defense counsel sought to elicit information as to Agent Goode's notes. It is clear that he was seeking to bar admission of the statement by challenging the probable cause for the apprehension that preceded it, and alternatively seeking to test the accuracy of Agent Goode's recollection as to the content of the oral statement.

Agent Goode testified that he had compiled Agent's Investigation Reports (CID Forms 94, 1 January 1976). Those had been attached to the final CID Report of Investigation (DA Form 2800, 1 January 1976) as exhibits and already had been furnished to the defense, which introduced the Report and exhibits in evidence as Defense Exhibit B. Agent Goode also stated that he had prepared Interview Worksheets (CID Form 44, 1 January 1976) and forms entitled "Agent Activity Summary" (CID Form 28, 1 August 1974) in the course of his investigative activities. These documents were not available for the rehearing at Fort Leavenworth, Kansas. Rather, they were located in Agent Goode's office in Mainz, Germany; the area where the offenses, investigation, and initial trial took place. Citing the Jencks Act, appellant's counsel sought to obtain these case activity notes, Agent Activity Summaries, or reading files, as they were variously called, for cross-examination purposes.

Agent Goode had testified that his Agent Activity Summaries would not reveal the substance of what the appellant had said; that his practice was merely to record the date and time of an interview and refer to the Agent's Investigation Report (or, in the case of a written statement, to the statement itself) where the details could be found.[3] Accordingly, the military judge commented as follows:

> Now, it seems to me that the witness has testified that there is a case activity note or a case file or something of that sort. But, with respect to his specific testimony, he made no notes on that. Therefore, there are no notes to produce. And I am hesitant, Mr. Davis [appellant's civilian counsel], my feeling is that it would be a futile act to order the production of the case notes since they could not, taking his testimony at face value, be the subject of his testimony.

After hearing further argument and further testimony from Agent Goode, in which he indicated that he had refreshed his recollection for the trial only by looking at the

---

**3.** Our inspection of Agent Goode's Agent Activity Summaries confirms his description of their content.

report admitted as Defense Exhibit B because "in essence, that is the entire file, this final report. It contains copies of the statements and every action that was taken by myself," the military judge ruled—

> Well, after having inspected the final report and the AIR [Agent's Investigation Reports] to which Mr. Goode has referred, my feeling is that it will be an unnecessary delay to order the production of the other case files and I will not do so.[4]

▉▉ The military judge's interpretation of the Jencks Act was too narrow. To qualify as a "statement . . . which relates to the subject matter as to which the witness has testified," it is only necessary that the agent's notes relate generally to the events as to which he has testified (e. g., as in this case, the time of receipt and sources of information leading to the apprehension of the appellant and the time and facts of his apprehension, interrogation, and release).[5] Consequently, we hold that the military judge should have ordered production of Special Agent Goode's Agent Activity Summaries.[6]

### Remedies

▉▉ Not every Jencks Act error is prejudicial. *United States v. Albo,* 22 U.S. C.M.A. at 34, 46 C.M.R. at 34. However, when the agent's notes are not attached to the record, we are unable to determine that, if they had been given to the defense, no impeachment could have occurred and thus that the error was harmless. *See Id.* at 35, 46 C.M.R. at 35.[7] Under these circumstanc-

es, it appears to us that three alternatives normally are available to an appellate court. The first two were mentioned by the *Albo* court as follows:

> Some Article III courts have reversed such cases without further proceedings . . . .. Other Article III courts have returned the record for further proceedings at the trial level to determine whether the statements should have been produced.

*Id.* A third alternative is suggested in Chief Judge Brown's opinion in *United States v. Rivero,* 532 F.2d 450, 461 (5th Cir. 1976), as follows:

> When it comes to relief several options are open. *We could, of course, order the production of Marin's grand jury testimony* [requested under the Jencks Act] *for an in camera inspection by us.* But from the natural give and take of any hotly contested trial the Trial Judge is in a much better position than we would be in assaying the practical effect of the nonavailability of this grand jury testimony. . . . [Emphasis added.]

The *Rivero* court remanded the case to the trial judge for an in camera inspection of the witness's grand jury testimony and further proceedings if warranted.[8] While not doubting the wisdom of Chief Judge Brown's observation, our preference for in camera inspection by the trial judge, rather than by ourselves, is not so strong. Unless the Jencks Act issue is made the basis for an interlocutory appeal, the trial judge's recollection can be dimmed by the passage

---

4. There are indications that the notes had been requested of the CID office before the rehearing. The failure to have them available at the trial site, whatever the reason, obviously led the judge to feel that he must weigh the disadvantages of delay against the advantages of production. *But see note 5, infra.*

5. *United States v. Pacelli,* 491 F.2d 1108, 1118 (2d Cir. 1974); *United States v. O'Brien,* 444 F.2d 1082, 1086 (7th Cir. 1971). Material subject to production must be produced despite the agent's claim that it is all contained in his report, although the fact that it is in the report may render an error harmless. *See United States v. Johnson,* 521 F.2d 1318, 1320 (9th Cir. 1975).

6. Had the Government protested that any part of them did not relate to the subject-matter of the agent's testimony, section 3500(c) of title 18, United States Code, provides for in camera inspection and the excising of portions not required to be produced.

7. A corollary to this statement is that, if the notes *were* attached to the record, we *could* determine whether the error was harmless. *See United States v. Albo,* 22 U.S.C.M.A. 30, 35 n.3, 46 C.M.R. 30, 35 n.3 (1972).

8. The same preference for in camera inspection by the trial judge was shown in *Lloyd v. United States,* 412 F.2d 1084, 1088 (5th Cir. 1969).

of time and the intrusion of other cases. Also, we, too, have the benefit of a verbatim transcript of the entire proceedings. In any event, military criminal procedure does not afford a regular method for remanding to the same trial judge who conducted the trial, which evidently is the reason why the Court of Military Appeals, in *United States v. Albo, supra,* set aside the findings and sentence and authorized a rehearing.[9]

We do not read *Albo* and *Herndon* as precluding a determination by this Court, after inspection of the agent's notes, whether the failure to produce them was prejudicial, for we see no indication that this alternative was considered by counsel or the Court of Military Appeals. We have before us a full transcript of the proceedings below. We are undertaking no more than would be demanded of us had the trial judge himself examined the notes, ruled erroneously (as in this case) that they did not relate to the agent's testimony, denied production of the notes, and attached them (sealed) to the record for our appellate review. We would then, as now, be called upon to determine whether the error was prejudicial or harmless.[10]

Accordingly, we have reviewed an investigative file pertaining to the housebreaking and larceny with which the appellant was charged. The file was produced by Government appellate counsel pursuant to our order, and we denominate it in the record Government Appellate Exhibit I. Specifically, we have reviewed the Agent Activity Summary (3 pages) relating the activities of Agent Goode (who testified) and Agent Kelly (who did not) from notifi-

cation of the theft (2052 hours, 28 July 1976) through preparation of the final Report of Investigation (Defense Exhibit B) on 6 August 1976. In addition, we have reviewed the Interview Worksheets pertaining to Agent Goode's interrogation of the two victims, each witness, Thompson, and the appellant. This file bears indicia both of authenticity (and has not been objected to as unauthenticated) and completeness.

This examination discloses to our satisfaction that the appellant was not prejudiced by the failure to have afforded his counsel access to the agent's notes. They contain nothing inconsistent with Agent Goode's testimony and no information that was not already available in Defense Exhibit B (the final Report of Investigation accompanied by Goode's Agent's Investigation Reports (AIR)). His Interview Worksheets contain nothing of interest not already recorded in the statements of the interviewees and confirm that the statements of those whose information was relied on for probable cause to apprehend the appellant were made before the apprehension.[11] The Interview Worksheet pertaining to appellant merely serves to confirm that the interview took place between 0025 and 0125 hours, 29 July 1976, that the interviewer (Goode) "read and explained" his rights, that no counsel was present, and that no written statement was made. The relevant entry in the Agent Activity Summary conforms exactly to Agent Goode's recollection or prediction: "Interviewed DIXON, SEE AIR." There is nothing more.[12] Under these circumstances the error was harmless.

---

9. 22 U.S.C.M.A. at 35, 46 C.M.R. at 45. Judge Cook, dissenting in *United States v. Herndon,* 5 M.J. 175 (C.M.A.1978) (Summary Disposition), would order a limited hearing of the type prescribed in *United States v. DuBay,* 17 U.S.C. M.A. 147, 37 C.M.R. 411 1967).

10. By having ourselves ordered production of the agent's notes for our appellate examination, we do not perceive that we are considering matters outside the record in the sense of such decisions as *United States v. Bethea,* 22 U.S.C. M.A. 223, 46 C.M.R. 223 (1973). Cf. *United States v. McCarthy,* 2 M.J. 26, 28 n.2 (C.M.A. 1976); *United States v. Carter,* 1 M.J. 318, 320 n.3 (C.M.A.1976). Perhaps it should be noted

that we are examining material that the trial defense counsel affirmatively wanted the record to include.

11. The military judge ruled that probable cause for the apprehension existed. That ruling has not been challenged on appeal. We view it as correct.

12. Our inspection of the file has not been "in camera." Appellate counsel for the appellant concurrently has had full access to the file, and has not indicated to us any way in which the notes could have been used for impeachment.

The findings of guilty and the sentence are affirmed.

Judge TALIAFERRO and Judge WATKINS concur.