UNITED STATES of America, Plaintiff-Appellee,

v.

John Glenn PETERS, Defendant-Appellant.

No. 79–1184.

United States Court of Appeals, Tenth Circuit.

Argued May 8, 1980.

Decided July 7, 1980.

Teresa M. Black, Asst. U.S. Atty., Oklahoma City, Okl. (Larry D. Patton, U.S. Atty., Oklahoma City, Okl., with her on brief), for plaintiff-appellee.

Warren Gotcher of Gotcher, Gotcher & Taylor, McAlester, Okl., for defendant-appellant.

Before BARRETT and DOYLE, Circuit Judges, and MILLER,* Judge.

WILLIAM E. DOYLE, Circuit Judge.

John Glenn Peters here appeals from a judgment convicting him on three counts brought pursuant to 18 U.S.C. 1341, the mail fraud provision. The original indictment contained mail fraud counts and one conspiracy charge. The allegations were that Peters obtained funds from the CETA (Comprehensive Employment and Training Act) program for training three new em-

---

* The Honorable Jack R. Miller of the United States Court of Customs and Patent Appeals, sitting by designation.

ployees. In fact, two of the employees sponsored by the program had worked for Peters previously and none of the three received the type of training required. Peters was tried to a jury, along with two codefendants before the Honorable Luther B. Eubanks, U.S. District Judge for the Western District of Oklahoma presiding. His two codefendants were acquitted. Peters was sentenced to three years' probation and $1,000 fine on each count, the sentences to be served concurrently. He was, in addition, ordered to repay $1,512.00 to CETA. This was restitution for three CETA reimbursement checks which the jury found that Peters had fraudulently received.

The first issue advanced by the defendant-appellant is whether the indictment should have been dismissed, his contention being that the government misused process in indicting him. His further contentions are that the evidence was inadequate, particularly in the area of criminal intent, and that there was a Jencks Act violation growing out of the failure of the trial court to examine grand jury testimony for relevance.

We have concluded that the judgment must be affirmed in part, with the exception of that aspect having to do with the Jencks Act. We remand that part of the case so that the trial court can examine the transcripts and determine their relevancy in accordance with the Jencks Act.

The alleged mail fraud violations arose in connection with the operation of a meat processing business in McAlester, Oklahoma. Peters had operated this business prior to September 17, 1974. On that date he sold it to one Alex Van Zandt, who had obtained an SBA loan to purchase it. Peters sold the business, but retained the building in which it was located. Van Zandt immediately ran into financial trouble. Peters loaned the corporation sums of money in order to keep the business running. He served also as general manager, but was not paid for his services.

In the fall of 1974, arrangements were made to obtain CETA funds to defray wage expenses for three employees. The Oklahoma Employment Security Commission approved a grant of $2,160 for the purpose of training three new employees as meat clerks in an on-the-job training program. This, in accordance with the Act, was to provide employment together with job training for unemployed persons. The contract and the regulations require the employees to be unemployed for at least one week, and the employer must conduct a training program for the CETA-sponsored employees.

Peters denied that he helped Van Zandt obtain the described contract, but Van Zandt testified as a witness against Peters. He said that Peters went with him to the Oklahoma Security Commission to make the arrangements. Peters said that Van Zandt had not told him what the program was, but had said that he was going to get some help from the government to pay salaries for new employees. Thereupon, one Laura I. Mass was hired as a meat wrapper. Carey L. Cole and Bill Collins, Jr., previous McAlester Frozen Foods employees under Peters, were brought into the company under the CETA program. These people had been employed by McAlester Frozen Foods at the time they were brought into the program. There is no question but that Collins and Cole had been trained for the positions that they occupied and there was no new training after they were put under CETA. As a result of Van Zandt having difficulty in meeting the expenses, he, in February 1975, released the building lease to Peters, who took over and operated it as a sole proprietorship. Peters' testimony was that he, at that time, called on the CETA office as to what to do about the contract. He was told to leave it in force since it had only 90 days left to run. Later, the FBI conducted an investigation as to the obtaining of the SBA loan by Van Zandt. The investigation leading to the present indictments developed from this FBI investigation.

## I.

The first point argued is that the government had an invalid motive in bringing the charges.

■ This consisted of an effort to get Peters to sign a statement incriminating one Gene Stipe. Peters refused to do this. Peters testified, in addition, that he was threatened that unless he would testify against Stipe, that he would be taken care of. This point does not satisfy the standards set forth in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1975), and *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Neither of the cases cited govern the present case. The record here shows probable cause for presenting this matter to the grand jury. The kind of vindictiveness that affects due process such as was present in *Blackledge* is lacking.

## II.

We have considered the further contention that there was a violation of Rule 16(a) by not disclosing to the defendant his statements made to the FBI.

■ The nondisclosure was not shown to have been prejudicial to the substantial rights of the defendant. *See United States v. Jensen*, 608 F.2d 1349, 1357 (10th Cir. 1979); *United States v. Heath*, 580 F.2d 1011, 1021 (10th Cir. 1978), *cert. denied* 439 U.S. 1075, 99 S.Ct. 850, 59 L.Ed.2d 42 (1979); *McClendon v. United States*, 587 F.2d 384, 388 (8th Cir. 1978), *cert. denied* 440 U.S. 983, 99 S.Ct. 1793, 60 L.Ed.2d 244 (1979); *United States v. Ross*, 511 F.2d 757, 764 (5th Cir.), *cert. denied* 423 U.S. 836, 96 S.Ct. 62, 46 L.Ed.2d 54 (1975).

Conversations between Peters and one Billie Cantrell do not appear to have anything to do with the CETA fraud case and do not contain any evidence having a tendency to show that Peters was innocent. Billie Cantrell is the wife of Billy Francis Cantrell. She was not a witness in the present case.

Our conclusion is that this contention has no merit.

## III.

As to the alleged insufficiency of the evidence, Peters' contention is that it is inadequate to establish that he was aware of the standards and requirements of the CETA program.

■ We are cognizant of the necessity for considering the evidence in a light most favorable to the government. *See United States v. Wolf*, 561 F.2d 1376, 1378 (10th Cir. 1977); *United States v. Curtis*, 537 F.2d 1091, 1097 (10th Cir.), *cert. denied* 429 U.S. 962, 97 S.Ct. 389, 50 L.Ed.2d 330 (1976). We are also aware that it is for the jury to finally consider the weight to be given to the evidence and the credibility of witnesses. *Madrid v. Mine Safety Appliance Co.*, 486 F.2d 856, 858 (10th Cir. 1973). Moreover, willfulness is not ordinarily provable by direct evidence. It must be inferred from basic facts. *United States v. Wolf*, *supra*; *United States v. Curtis, supra*; *United States v. Seasholtz*, 435 F.2d 4 (10th Cir. 1970); *Crosby v. United States*, 183 F.2d 373, 375 (10th Cir.), *cert. denied* 340 U.S. 906, 71 S.Ct. 274, 95 L.Ed. 656 (1950).

There is a factual conflict on the question whether or not the defendant knew that the CETA program required that persons coming under it be new employees and thus not previously trained. The facts and circumstances are susceptible to the inference that Peters did have knowledge of this requirement. Certainly Peters knew that the people were employed there prior to their having been placed under the CETA program.

■ Van Zandt testified that Peters went to the CETA office with him to make the arrangements. When Peters resumed ownership, he did not lack knowledge or information on how the business was being operated. During the time prior thereto, he was participating in it and he certainly knew that Cole and Collins were old employees. Thus it is impossible to say that there was no basis for inferring that he knew of their condition.

## IV.

### WAS THERE A VIOLATION OF THE JENCKS ACT?

Objection was made following the direct examination of Billy Francis Cantrell. This objection was pursuant to the Jencks Act, 18 U.S.C. § 3500. Cantrell's testimony was

damaging to the defendant in that it was shown that he had worked for Peters for five years (at the meat processing plant). He testified to the fact that Peters stated that he was going to go get government money to pay part of Collins' and Cole's salaries. Also, Cantrell was named as one of the persons in charge of training under the CETA program. He was to teach personal safety and machine operation. He testified that he had not known that he was doing training. He also said that neither Collins nor Cole received any training at the time in question and that Peters had known that Collins and Cole were not employees who had been hired for the first time in order to provide them with the required training. Cantrell said that Peters was the boss and that "he run the plant." On cross-examination Cantrell was asked whether, when he referred to government money, it may have been the SBA loan with which Van Zandt purchased the business.

When counsel for the defendant demanded the Jencks material related to Cantrell, the U.S. Attorney stated that he had provided what he considered the only material which was within the scope of the Jencks Act. The United States Attorney agreed that the government had in its possession certain other testimony of other matters (which might constitute Jencks Act materials), "but they are not related to the subject matter, thus are not disclosable under the Jencks Act." The trial court said: "If they don't relate to this proceeding at all—MR. PATTON: Yes, sir. THE COURT: —I think that's right. Okay." The materials which are sought by Peters are not part of the record on appeal. There were, however, materials which would be subject to production, including FBI interviews and other grand jury statements of this particular witness, Mr. Cantrell, if relevant.

Defendant here contends that the trial court erred in taking the word of the United States Attorney that these materials were collateral to and immaterial to the testimony at hand. The Jencks Act, 18 U.S.C. § 3500, provides in pertinent part:

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court *shall* order the United States to deliver such statement for the inspection of the court, in camera. . . .

(Emphasis added.)

■ Plainly, it is the duty of the court to determine relevancy, and in order for this determination to be made the judge must read the material. If the material relates to the direct testimony of the witness, it has to be produced for examination and use by counsel for the defendant. Here the trial court merely took the word of the United States Attorney. We must hold that this was, under the circumstances, erroneous. Subsection (c) states in clear terms that if the United States claims that it does not relate to the testimony of the witness, "the court shall order the United States to deliver such statement for the inspection of the court in camera. . . ." The subsection goes on to provide that the court shall excise matters which do not relate to the subject matter and after that shall deliver the remaining parts to the defendant for his use.

■ Under the Jencks Act, the trial court has an affirmative duty to gather the material necessary in order to satisfy the requirements of the Act. *Ogden v. United States*, 303 F.2d 724, 732 (9th Cir. 1962), *cert. denied* 376 U.S. 973, 84 S.Ct. 1137, 12 L.Ed.2d 86 (1964). *See Campbell v. United States*, 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963) (*Campbell* II). The impropriety of allowing the government to make the determination as to rele-

vancy has been pointed out on many occasions. *See United States v. Conroy,* 589 F.2d 1258, 1273 (5th Cir.), *cert. denied,* 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979). *See also United States v. Walden,* 578 F.2d 966, 970 (3d Cir. 1978), *cert. denied* 444 U.S. 849, 100 S.Ct. 99, 62 L.Ed.2d 64 (1979); *United States v. Strahl,* 590 F.2d 10 (1st Cir. 1978), *cert. denied* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979); *United States v. O'Brien,* 444 F.2d 1082, 1086 (7th Cir. 1971); *Ogden v. United States, supra,* 303 F.2d at 737.

The case of *United States v. O'Brien, supra,* considers the meaning of the term "relate." The opinion states:

> [T]he word "relate" is not always limited to factual narratives . . . .. In determining whether the statements in question "related to" the direct testimony of the witness, it must relate generally to the events and activities testified to . . . .. We conclude, therefore, that within the context of the circumstances surrounding the continuing nature of the entire transaction as it relates to the investigation and surveillance, the trial court erred in ruling as a matter of law that the statements in question were not producible under subsection (b), [Section] 3500, *supra.*

444 F.2d at 1086.

We see no basis for the trial court to have assumed that events and activities related to the alleged SBA fraud were *per se* unrelated to Cantrell's direct testimony in this case. An *in camera* examination was essential in order for the trial court to discharge its duty under § 3500. The court should have considered whether the materials would be related generally to the events and activities testified to, and in a continuing investigation this scope may well be broad. *United States v. Dingle,* 546 F.2d 1378 (10th Cir. 1976) cited by the government is not controlling.

## V.

How should the Jencks Act problem be remedied?

 We are in no position to make any decision as to the extent of the harm because we have not read the material and we should not. It is well, however, to point out that the harmless error standard is subject to strict application in a Jencks Act case. *Goldberg v. United States,* 425 U.S. 94, 111 n.21, 96 S.Ct. 1338, 1348, 47 L.Ed.2d 603 (1976); *United States v. Beasley,* 576 F.2d 626, 629 (5th Cir. 1978), *cert. denied* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636 (1979). It is, of course, improper for an appellate court to seek to cut corners by considering the relevancy of such material in the light of the witness' direct testimony, because this is peculiarly a task for the trial court. *See Goldberg v. United States, supra,* 425 U.S. at 108, 96 S.Ct. at 1347; *Campbell v. United States, supra,* 373 U.S. at 493, 83 S.Ct. at 1360 (*Campbell II*).

 It does not appear from the mentioned authorities that we are required to vacate the conviction and order a new trial. *Goldberg* has described the remedy as calling for remand to the trial court to hold a new inquiry "consistent with this opinion." Thereafter, the trial court is to supplement the record with express findings and enter a new final judgment of conviction if the trial court concludes, following the new inquiry, to reaffirm its former rulings. Should the trial court determine. that the government was required to deliver the statements to the defendant-appellant, it should, in that event, vacate the judgment of conviction and give the petitioner a new trial. *See Campbell v. United States, supra,* 365 U.S. at 498–499, 83 S.Ct. at 1363–1364 (*Campbell I*); *Goldberg v. United States, supra* 425 U.S. at 111–112, 96 S.Ct. at 1348–1349; *United States v. Conroy, supra,* 589 F.2d at 1273; *United States v. Walden, supra,* 578 F.2d at 971; *United States v. O'Brien, supra,* 444 F.2d at 1087; *Ogden v. United States, supra,* 303 F.2d at 737.

We are mindful that there is a First Circuit decision, *United States v. Strahl,* 590 F.2d 10 (1st Cir. 1978), *cert. denied* 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979), in which the court determined that it was unnecessary to remand the case because of the strong evidence of guilt from sources other than the witness in question and because there was additional impeachment

material. The record in this case does not contain a large surplus of evidentiary material independent of the testimony of Cantrell, and so the *Strahl* decision is not applicable.

Based upon the foregoing, the judgment is affirmed in part and reversed and remanded in part. The district court is directed upon remand to conduct an *in camera* inspection of all of the disputed materials. Should the district court conclude that these materials would not have been useful to the defense in cross-examination discrediting or impeaching of Billy Cantrell, it should reaffirm its prior ruling. If, on the other hand, the district court should determine that the production of materials was unjustly denied, it should order a new trial. In all other respects, the judgment of the district court should be and the same is hereby affirmed.