**UNITED STATES**

v.

**Airman First Class Willie J. DURDEN, FR 226–02–7431 United States Air Force.**

**ACM 23371.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 27 Oct. 1981.

Decided 14 July 1982.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major Richard A. Morgan.

Appellate Counsel for the United States: Colonel James P. Porter and Major George D. Cato.

Before POWELL, KASTL and RAICHLE, Appellate Military Judges.

### DECISION

PER CURIAM:

In this case [1] we analyze several matters relating to production of materials under the Jencks Act.[2] Finding no violation of the Act, we affirm the accused's conviction.

Agent Jones of the Office of Special Investigations (OSI) was assigned as an undercover operator in a drug investigation at Malmstrom Air Force Base, Montana. His local contact was Special Agent (SA) Watson, the OSI Detachment Commander.

During the undercover operation, Agent Jones wrote down memory jogging information such as names, dates, and addresses.

---

1. Despite pleas of not guilty, the accused was convicted under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, of possession, use, and transfer of marijuana by a general court-martial, military judge alone. He was sentenced to a bad conduct discharge, confinement at hard labor for six months, forfeitures, and reduction to airman basic.

2. The Jencks Act, 18 U.S.C. § 3500, applies to courts-martial. *United States v. Albo*, 22 U.S. C.M.A. 30, 46 C.M.R. 30 (C.M.A.1972); *United States v. Walbert*, 14 U.S.C.M.A. 34, 33 C.M.R. 246 (C.M.A.1963); *United States v. Heinel*, 9 U.S.C.M.A. 259, 26 C.M.R. 39 (C.M.A.1958); *United States v. Dixon*, 7 M.J. 556 (A.C.M.R. 1979).

According to Jones' testimony, he included all this information on tapes he recorded. Jones destroyed his notes as soon as he recorded each tape in order to protect the undercover operation and his personal safety. Then he passed each tape to SA Watson so a statement could be typed from it. There is no evidence of discrepancies between Agent Jones' notes and the typed statements. SA Watson testified that such notes are routinely destroyed by undercover agents, except in rare circumstances.

Agent Jones also wrote down serial numbers of currency provided by the OSI and earmarked to purchase marijuana from the accused. The serial number of each bill so "spent" was listed in the agent's statements. These notes were turned over to the local OSI office and forwarded to OSI headquarters in Washington, D.C. However, one purchase fell through, and the note recording those serial numbers was discarded by the agent. Those numbers were not listed in any of his statements. According to SA Watson, serial numbers of bills not used to purchase contraband are not normally retained.

During the investigation, Agent Jones recorded four tapes. They were transcribed by the local OSI office. The resulting documents were signed by Agent Jones as official statements. Defense counsel was furnished all of the agent's typed, signed statements and two of the four tapes from which they were transcribed. However, it was not part of OSI routine to retain tapes after transcription. Therefore, Jones' tapes were stored until someone in the office needed a tape to record other OSI information. Two of Jones' tapes had been destroyed by "recording over" in this manner

before SA Watson heard of the interest in the tapes and secured the remaining two.

Agent Jones and SA Watson testified that the statements furnished contained the same information as the tapes. Watson also testified that, except for punctuation, the statements were verbatim transcriptions of the tapes.

At trial, the defense made a Jencks Act request for three categories of materials prepared by Agent Jones: (1) memory jogger notes; (2) a note containing serial numbers of currency not used to purchase contraband; and (3) tapes containing statements which had been transcribed and provided to the defense.

### Memory Jogger Notes

■ The military judge did not err in denying the defense motion to strike Agent Jones' testimony because the Government could not produce his investigation notes. We hold that these sketchy, personal notes are not "statements," as that term is defined in the Jencks Act and therefore need not be produced. *United States v. Spencer*, 618 F.2d 605, 606 (9th Cir. 1980) (police officer's rough notes of investigation not "statements" under the Act); *United States v. Bernard*, 623 F.2d 551, 558 (9th Cir. 1979) (Government agent's truncated personal notes not producible since not "statements" under the Act); *United States v. Cuesta*, 597 F.2d 903 (5th Cir. 1979) (investigator's notes not Jencks Act "statements"), cert. den., 444 U.S. 964 (1979); *State v. Maluia*, 56 Haw. 428, 539 P.2d 1200, 1209 (1975) (incorporation of information from notes into a report is not adoption/approval and therefore does not make notes statements).[3]

---

**3.** In some cases, documents prepared by agents have been held to be "statements" under the Jencks Act definition. *United States v. Albo*, 22 U.S.C.M.A. 30, 46 C.M.R. 30, 34 (C.M.A. 1972) (case activity notes available in files were producible statements); *United States v. Bosier*, 12 M.J. 1010, 1012 (A.C.M.R.1982) (notes by confidential informant were more than surveillance notes—were statements adopted when relayed orally to investigator); *United States v. Kilmon*, 10 M.J. 543, 545 (N.C.M.R.1980) (unsigned, handwritten outline orally verified by

the witness and given to the OSI was statement under the Act); *United States v. Dixon*, 7 M.J. 556, 557 (A.C.M.R.1979) (case activity notes or agent activity summaries on file are statements under the Act); *Holmes v. United States*, 271 F.2d 635, 638 (4th Cir. 1959) (FBI agent's report on file was statement). However, the situation here is different since Agent Jones had not adopted or approved his sketchy memory joggers. This is required for the material to qualify as a statement under the Jencks Act definition.

In analyzing the defense request for access, it is important at the outset to recognize the distinction between an agent's witness interview notes recording the words of another, and an agent's investigation notes recording personal observations, acts, and thoughts.[4] Rough investigation notes may be incomplete or include impressions and conclusions to be clarified when the agent prepares a report from all available information. *United States v. Bernard, supra,* at 558.

■ Moreover, we perceive no duty on law enforcement officers to retain rough notes when their contents are incorporated into official records and the notes are destroyed in good faith.[5] *United States v. Pacheco,* 489 F.2d 554, 566 (5th Cir. 1974), cert. den., 421 U.S. 909 (1975); *United States v. Terrell,* 474 F.2d 872, 877 (2d Cir. 1973); *United States v. Covello,* 410 F.2d 536, 545 (2d Cir. 1968), cert. den., 396 U.S. 879, 90 S.Ct. 150, 24 L.Ed.2d 136 (1969); *United States v. Jones,* 360 F.2d 92, 95 (2d Cir. 1966), cert. den., 385 U.S. 1012, 87 S.Ct. 721, 17 L.Ed.2d 549 (1967).

Here, Agent Jones destroyed his notes not to conceal impeaching or exculpatory evidence from the defense but to maintain the security of the undercover operation. He testified that all the information in his notes was incorporated into the statements and there is no evidence that he destroyed the notes in bad faith. Thus, we perceive no error.

4. "It may be that the agent ... who adapts a final report from preliminary memoranda will tailor his observations to fit his conclusion, but the danger is not nearly so great as when he revises the notes or the full statement of another." *Palermo v. United States,* 360 U.S. 343, 352–53, 79 S.Ct. 1217, 1224–25, 3 L.Ed.2d 1287 (1959).

5. Our research has disclosed no military cases directly on point. However, the retention requirements which could result from granting defense counsel's request are potentially staggering. Creation of a paper mill would undermine the effectiveness of law enforcement efforts. In response to a similar request for surveillance notes, the Ninth Circuit Court of Ap-

## Serial Numbers

■ This issue need not detain us long. We will not require the Government to retain the serial numbers of bills *not* used to purchase contraband. Such information has no relevancy to the charges in this case.

## Tapes

■ We conclude that the military judge's refusal to strike Agent Jones' testimony even though the Government could not produce the two requested tapes was not error. *United States v. Myers,* 13 M.J. 951 (A.F.C.M.R.1982).[6] Here, as in *Myers,* the defense ability to cross-examine the witness was not impeded. *United States v. Terrell, supra,* at 877. We hold that, on the peculiar facts of this case, where a tape and a written transcript thereof contain the same or substantially the same information, in the absence of bad faith destruction of the tape, there is no requirement to strike testimony because of the Government's inability to produce the tape.

Similarly, the Fifth Circuit Court of Appeals found no error in the failure to produce a handwritten document in view of testimony by the agent who wrote it that the typed copy was the same or substantially the same. *United States v. Jiminez,* 484 F.2d 91 (5th Cir. 1973). Here, in addition to Agent Jones' testimony, SA Watson testified that the contents of the tapes and the typed statements were identical. Also, there was no evidence that the OSI destroyed the tapes in bad faith.

The remaining assignment of error is resolved adversely to the accused.

peals said, "(b)esides retaining every scrap of paper that could be required, the same logic would dictate that all original tapes of conversations would also have to be maintained. The result from a policy standpoint would be the creation of an unwieldly national attic of scrap paper and magnetic tape which would not advance the cause of justice." *United States v. Spencer* 618 F.2d 605, 607 (9th Cir. 1980).

6. This Court held that the agent's statement had not been destroyed but was available in a different form. In that case, as here, there was compelling evidence that the agent's written statement and the one typed from it were identical.

The findings of guilty and the sentence are

AFFIRMED.